KLEBE ET AL., COPARTNERS, TRADING AS L. KLEBE & COMPANY, v. UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 78.   Argued October 16, 17, 1923.—Decided November 12, 1923.

1. A contract implied in fact is one inferred from circumstances or acts of the parties; an express contract speaks for itself and excludes implications. P. 191.
2. Where the Government, relying on a purchase-privilege clause of a construction contract, appropriated a steam shovel, used in the

work, which the contractor had leased from another, *held,* that the shovel-owner's cause of action against the United States was either in tort, which could not be maintained under the Tucker Act, or upon the express contract, for payment as therein provided; but that a contract to pay the value of the shovel could not be implied. *Id.*

57 Ct. Clms. 160, affirmed.

APPEAL from a judgment of the Court of Claims, awarding the appellants damages under an express contract but refusing to recognize their larger claim of implied contract.

*Mr. Daniel C. Donoghue* for appellants.

*Mr. Assistant Attorney General Ottinger,* with whom *Mr. Solicitor General Beck* and *Mr. Charles H. Weston,* Special Assistant to the Attorney General, were on the brief, for the United States.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

Appellants, plaintiffs below, were the owners of a traction steam shovel, which they leased to the Bates & Rogers Construction Company for $25 per day. At the time of the lease and prior thereto the Construction Company was engaged, under contract, in certain work for the United States for which the shovel was procured and used. Article II, paragraph (c) of the contract under which the work was done provided that the Construction Company should be reimbursed for rentals actually paid for steam shovels, at rates which were named, the company being required to file with the contracting officer of the Government a schedule setting forth the fair valuation of each part of the construction plant at the time of its arrival at the site of the work. This valuation was made final except upon a contingency which is not material here. The paragraph further provided that when the total

rental paid by the Government for any such part should equal its valuation, no further rental should be paid and title thereto should vest in the United States. At the completion of the work the contracting officer was by the contract given the option to purchase for the United States any part of the plant then owned by the Construction Company by paying the difference between the valuation thereof and the total amount of rentals theretofore paid.

A written instrument leasing the steam shovel to the Construction Company was executed by the plaintiffs and the Construction Company, which, among other things, recited that plaintiffs had made themselves acquainted with the provisions of Article II of the contract between the Construction Company and the United States, which plaintiffs agreed should " apply to and be enforceable against the said equipment furnished and leased hereunder, to the end that the United States Government may have and exercise as to and against the said equipment all rights provided for in said paragraph (c), with respect to plant or parts thereof owned and furnished by the party of the second part " (the Construction Company); the plaintiffs " to be entitled, as owner, to receive any purchase price payments which upon any appropriation of said equipment by the United States Government, under said Article II, may be coming from said Government." The valuation of the shovel stated in the lease was $5,000. Basing his action expressly upon the provisions of the lease incorporating paragraph (c), and after $4,225 in rentals had been paid upon the shovel, the contracting officer, properly authorized to do so, exercised the option of the Government and took over the steam shovel as its property. This was done a short time before the completion of the work. The plaintiffs were notified but insisted that the lease did not authorize this action. The record shows that the Government has been ready and willing at all times to pay the difference ($775)

between the valuation of the shovel and the amount of rentals paid.

Plaintiffs insisted that the United States was not privy to the leasing contract and brought suit to recover the value of the shovel, viz., $5,000, upon the theory that it had been taken by the Government for public use and that thereby an implied obligation arose on the part of the Government to pay just compensation therefor. The court below, one judge dissenting, found that the property was taken under the express contract, creating a liability for $775 only, and, therefore, no implication of a promise could be indulged. Judgment for plaintiffs for this amount was rendered.

In *United States* v. *North American Co.,* 253 U. S. 330, this Court said (p. 335): "The right to bring this suit against the United States in the Court of Claims is not founded upon the Fifth Amendment, *Schillinger* v. *United States,* 155 U. S. 163, 168; *Basso* v. *United States,* 239 U. S. 602, but upon the existence of an implied contract entered into by the United States. *Langford* v. *United States,* 101 U. S. 341; *Bigby* v. *United States,* 188 U. S. 400; *Tempel* v. *United States,* 248 U. S. 121, 129; *United States* v. *Great Falls Manufacturing Co.,* [112 U. S. 645,] *supra; United States* v. *Lynah,* [188 U. S. 445, 462, 465,] *supra.*" But the circumstances may be such as to clearly rebut the existence of an implied contract, *Ball Engineering Co.* v. *White & Co.,* 250 U. S. 46, 57; *Horstmann Co.* v. *United States,* 257 U. S. 138, 146, as here, where possession of the property was taken under an asserted claim of right to do so by virtue of an express contract. It is said that the claim is not well-founded, but that is not material. In *Tempel* v. *United States,* 248 U. S. 121, 130, this Court said: "It is unnecessary to determine whether this claim of the Government is well-founded. The mere fact that the Government then claimed and now claims title in itself and that it denies title in the plaintiff, prevents the

court from assuming jurisdiction of the controversy. The law cannot imply a promise by the Government to pay for a right over, or interest in, land, which right or interest the Government claimed and claims it possessed before it utilized the same. If the Government's claim is unfounded, a property right of plaintiff was violated; but the cause of action therefor, if any, is one sounding in tort; and for such, the 'Tucker Act affords no remedy." The parties here stipulated and the Court of Claims found that the property "was appropriated by the Government as its property under the purchase privilege clause of the contract between the plaintiffs and the Bates & Rogers Construction Company." A contract implied in fact is one inferred from the circumstances or acts of the parties; but an express contract speaks for itself and leaves no place for implications. See *King* v. *Kilbride,* 58 Conn. 109, 117; *Brown* v. *Fales,* 139 Mass. 21, 28. To sustain the contention that the express contract is not binding or enforceable in favor of the Government and consequently that its claim here is not well founded would not help the plaintiffs, since then the resulting cause of action would be one sounding in tort and not within the purview of the Tucker Act. *Tempel* v. *United States, supra.* In this view of the matter it becomes unnecessary to consider whether the privilege of purchase was prematurely exercised.

The Court of Claims did not dismiss the petition but rendered judgment in accordance with the terms of the express contract. Whether this action was proper under the pleadings we do not stop to inquire since the Government has not appealed therefrom and its liability under the express contract is admitted. The judgment is

*Affirmed.*