Booth, -Judge,
delivered the opinion of the court.
The plaintiff leased certain lands in Florida to the Government to be occupied as a naval air station. The lease was renewed a couple of times, and the Government continued in possession until May 1, 1921, although the last written lease expired by express limitation on June 30, 1920. The written leases, in clause 4, provided as follows:
“ 4. It ife understood and agreed that all structures, buildings, or other improvements whatsoever that may be placed on said tract by the lessee, and not so fixed as to become a part thereof, shall be and remain the property of the lessee, and unless the same are sold or otherwise disposed of, *856 the said property is to be removed promptly by the lessee at its sole cost and expense upon the termination of this lease.”
The Government erected on the premises a 'large number of buildings, varying in size and character, but all designed and intended for its use in the training of aviators, housing of aviation equipment, administration of a naval air station, and housing of officers and student aviators. In fact, all that was done was the necessary things to do to train aviators for the war. During the tenancy of the Government, through administration channels, all the buildings above described were advertised for sale, and finally sold. The purchaser thereafter wrecked the same and removed the salvaged materials from the land. It is of this the plaintiff complains and this suit is to recover damages for the injury alleged, predicating the right of recoven7 upon an alleged breach of clause 4 of the lease.
Two questions present themselves": First, one of jurisdiction, and secondly, on the merits. The Government contends that the cause of action sounds in tort, is ex delicto, and not within the terms of section 145 of the Judicial Code. The question is a close and troublesome one. Manifestly the Government proceeded upon the theory of a legal right to do what it did do, for desjfite the protests of the plaintiff, in fact ignoring them, it asserted title to the property, and disposed of it as an owner, and it has been repeatedly decided by the Supreme Court that when the Government claims title to property which it takes for a public purpose, no implied agreement to pay therefor arises. Temfel v. United States, 248 U. S. 121 and. cases cited therein.
In the case of Klebe v. United States, 263 U. S. 189, Mr. Justice Sutherland, in deciding the issue adversely to the plaintiff, used this- language: “ But the circumstances may be such as to clearly rebut the existence of .an implied contract * * * as here, where possession of the property was taken under an asserted claim of right to' do so by virtue of an express contract.” It is true Klebe was not claiming under an express agreement between himself and the Government, but the latter was asserting title under an express agreement between Klebe’s lessee and itself. In *857 other words, the Government’s source of title rested upon an express contract, as in this case, and acting under this agreement it asserted title, which fact was sufficient, aside from the merits of the controversy, to preclude the implication of a contract to pay for the thing taken. So that we think, beyond doubt, this phase of the issue is settled.
There remains then to consider whether what the Government did was a breach of the contract between the parties. The plaintiff’s theory, if we correctly apprehend it, is that by the terms of the contract the buildings claimed. for became the property of the plaintiff immediately upon becoming affixed to the freehold; that the Government so agreed and promised not to remove them; that it was a part of the consideration for the demise, and just as much enforceable as the collection of money rental; that under these circumstances the claim is founded upon an express contract under section 145 of the Judicial Code. Notwithstanding some hesitation, we are constrained to in part agree with this contention.
The Government entered into a valid contract with the plaintiff, a written lease for the use and occupancy of certain premises. The contract, of course, speaks for itself. "Whatever rights the plaintiff has in the premises flow from this instrument, necessarily involve its construction, and are founded thereon. A contractual relation existed between the parties, and the issue now is, What rights did the plaintiff acquire in virtue thereof, when the lease is construed in the light of its terms and the general rules of law governing the same, which the defendant failed to observe ? In other words, the transaction Avas a lease by the Government of a certain tract of land, and in this respect is identical with a similar transaction between individuals, and to be so treated.
Goi^g then to the merits of the case, it is not disputed that the construction of the lease is involved. What was the intention of the parties with respect to the matters provided for in clause 4 of the contract? It provided that structures, buildings, and improvements so affixed to the tract demised as to become a part thereof shall become the property of the lessor. When and in Avliat manner under *858 .the law do improvements become a part of the tract? The clause itself does not definitely determine what shall constitute “affixed,” and without some definite limitation in this respect we are not at liberty to go outside what the law determines as fixtures, improvements which become a part of the. realty and lose their character as personalty. The very terms of the clause clearfy indicates an intention to treat the subject matter as of its legal status, for at best it does no more than state the common-law rule prevailing in most of the States with respect thereto.
Beginning with the case of Van Ness v. Pacard, 2 Pet., 137, and extending forward all through the course of judicial decision the courts of the country have pursued a most liberal policy with reference to the right of a tenant to improvements erected on his landlord’s property. Primarily, the inquiry has been, what was the intention of the parties in erecting the improvements in view of the use to which the premises are to be put? Elwell on Fixtures, 2d Ed., p. 30. What, in the light of the facts and circumstances surrounding the making of the lease, as well as its terms, did the parties themselves conceive and intend to be their reciprocal rights in improvements, which may, as in this case claimed, materially enhance the value of the reversion when the lease expires ? It is not necessary to cite the many cases sustaining this proposition; they are practically uniform.
The plaintiff here was the owner' of a tract of land possessing potential but not great market value in the state of its condition at the time the lease was entered into. The vast disparity between the nominal money consideration to be paid and the sum to be expended by the defendant in permanent improvement of the tract, unmistakably indicates that filling in the land and improvement of riparian rights was the moving cause for the letting. The defendant’s obligation called for the expenditure of $25,000 in peignanent improvements to make the tract at all available.. As a matter of fact, it cost more.than five or six times as much, and it is almost inconceivable that the parties ever entertained a conception, or remotely considered the receipt by the lessor of a rental, the value of the buildings included, of $221,000, *859 the amount sued for, for this small unimproved tract of laud. The lessor knew the purposes for which the tract was leased; he must, of course, be held to know the character of the buildings which would be placed thereon, and what is more, knowledge must be ascribed to him of the extremely important fact that all the buildings would reflect in character of construction and architecture the peculiar type usually built as indispearsable adjuncts to training aviators at a naval training base, buildings which with few exceptions would have but little commercial value and could only enrich the reversioner in the way of salvage. Much testimony has been offered to show in just what manner the buildings claimed for were attached to their foundations, and from this we are asked to deduce the conclusion that they were affixed to the realty, but this, it seems to us, ignores the larger and more important question as to whether the legal right existed to remove, despite the detail of physical construction. Where a tenant leases land for the purposes of trade, some particular purpose, unusual in itself, especially in time of war, for bringing into being an effective addition to the fighting forces of the Navy, and in order to fully develop the needful class, it finds it necessary to erect on the land so leased buildings of the kind and style suited to its purpose, the law, it seems to us, will preclude the court from holding that the buildings so erected became part of the real estate simply because they had to be placed on a firm and permanent foundation, a foundation which the character of the soil demanded, when the buildings themselves may without injury to the freehold be removed from their foundations. Unless there appears some express covenant in the lease making it necessary, buildings of such a. temporary character do not lose their identity as personalty, and may not be considered as affixed to the real estate under the terms of a lease which merely recites that buildings not so affixed as to become a part thereof shall remain the property of the lessee. 26 Corpus Juris, p. 652. It is hardly to be supposed, in view of the terms of the lease, that any fixed policy existed to make this naval air station permanent, and the improvements were removed during the tenancy of the de *860 fendant, not afterwards. Wiggins Ferry Co. v. Ohio & Miss. Ry., 142 U. S., 396, 415.
Our position in this respect is apparently put at rest by the provisions of clause 9 of the lease, a clause following clause 4, and when read in the light of the general provisions of the lease and the facts in the case, discloses a clear understanding and intention of the parties to treat the transaction as one involving the ordinary rights and liabilities of a landlord and tenant. Clause 9 provides as follows :
“ The lessee further covenants and agrees at the expiration of the tenancy hereunder or any renewal thereof to surrender and give up subject to the conditions thereof, the said leased tract together with the improvements not placed thereon by the lessee, in the like condition they were in at occupation hereunder, ordinary wear and tear and damage by ñre, or the elements, or the military use to which said tract is put, excepted.”
Here, beyond a doubt, is an express stipulation wherein the lessee reserves the right to remove improvements placed on the leased premises by it, an unmistakable intention to preclude claims of ownership to improvements upon the part of the lessor, and is even broader in its terms than clause 4. The two clauses standing together can be reconciled in no other way than an obvious intention upon the part of the parties to recognize as fixtures only those improvements whose removal would result in injury to the freehold, not such temporary structures as could with care and without loss be taken from the premises without injury to the same. No idea of paying rental in improvements, no thought of losing title to structures by the mere fact of fixation, a fair understanding as to what was to pass and what was not to pass by reason of the contract. This we believe to be the intention of the parties when the lease was made.
It is said that the privilege of retaining the buildings was part of the consideration for the lease. This, we think, a very doubtful proposition. Clause 4 of the contract simply states the ordinary rule of law generally applied in cases involving fixtures to real property. If the same rights claimed under clause 4 would have accrued to the parties in the absence of such a stipulation, manifestly its terms *861 added nothing to the lease, and hence involved no consideration. As we view the case, the rights of the parties under the lease may as well be determined, as .regards fixtures, without clause 4 of the lease, as with it. Nothing was gained or lost by its insertion, and if indeed it was a part of the real consideration, the clause is a nullity under the case of Flores v. United States, 18 C. Cls. 852.
We have treated the case as on a basis of a similar lease between private individuals, and likened the. fixtures to trade fixtures in the commercial world. The defendant did not remove or undertake to remove any of the improvements which became permanently attached to the soil. The temporary structures placed on the premises as part of the enterprise were never intended as permanent improvements; the structures themselves so indicated. The plaintiff, by his words and conduct, clearly evinced an understanding that the real intent and primary purpose of letting his tract to the Government was to secure the advantages which did accrue to it, and to claim only those structures for his own xvhich could not be removed without injury to the freehold. In other words, the atmosphere of the whole proceeding clearly imports a fair and honest intent of the parties to consider as permanent improvements to the tract only those things which were in themselves concededly and undoubtedly part and parcel of the soil itself. It is not to be admitted that hangars, administration buildings, and temporary houses for sleeping purposes, placed upon and fastened to foundations, as of course they were, hastily erected to meet a great public emergency, are of that permanent character necessary to make them part of the realty and the parties never so intended. The testimony of the defendant shows that in many instances the buildings carried tar-paper roofs, were of the cheapest construction, and sold as of salvage value only.
We have not thus far colnmented on the question of authority to sell these buildings. The defendant did not raise the question, and silence in this respect we deem equivalent to the existence of some statutory authority to do so. If, however, there was no statute authorizing the sale and re *862 moval of the buildings, it could not be done, and what was done was without right or authority and obviously tortious. It is vital to our jurisdiction. No statute has been cited. Flores case, supra.
It has been the purpose of the court to dispose of the case in all its aspects in this opinion.
The petition is dismissed. It is so ordered.
Hat, Judge, and Campbebl, Chief Justice, concur.
Downey, Judge, did not participate in the decision of this case.