**TENNESSEE VALLEY AUTHORITY,**
**Plaintiff-Appellee,**

v.

**EXXON NUCLEAR COMPANY, INC.,**
**and Exxon Corporation,**
**Defendants-Appellants.**

**No. 83–5667.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 27, 1984.
Decided Jan. 23, 1985.

---

John B. Rayson, E.H. Rayson, Knoxville, Tenn., O.S. Hiestand, Thomas F. Williamson, argued (Lead), Marcia G. Madsen, Kathleen E. Troy, Washington, D.C., Randall M. Pais, Bellevue, Wash., for defendants-appellants.

Herbert S. Sanger, Jr., Tennessee Valley Authority, James E. Fox, Charles W. Van Beke, argued, Richard B. Campbell, D. Mark Hastings, Robert C. Glinski, Knoxville, Tenn., for plaintiff-appellee.

Before EDWARDS* and MARTIN, Circuit Judges; and GILMORE, District Judge.**

GILMORE, District Judge.

This is an appeal by Exxon Nuclear Company, Inc. (Exxon Nuclear) and its parent company Exxon Corporation (Exxon) from an opinion and order of the district court granting a summary judgment in favor of the Tennessee Valley Authority (TVA), reversing a decision of the TVA Board of Contract Appeals (TVA Board).[1] For the reasons set forth in this opinion, the district court is affirmed.

I.

The facts in this dispute are accurately set forth by the district court in *TVA v.*

---

* The Hon. George Edwards took senior status January 15, 1985.

** The Hon. Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Although the TVA Board is referred to as the Board of Contract Appeals, it is actually one person sitting alone as a hearing officer.

*Exxon Nuclear, Inc.,* 570 F.Supp. 462 (E.D. Tenn.1983), and we adopt them. The action involves a dispute over a contract dated August 27, 1970 between TVA and Jersey Nuclear Company, the predecessor of appellant Exxon Nuclear. The contract provided that Exxon Nuclear was to supply uranium fuel over an 11 year period at a base price of $6.40 per pound, subject to change according to Bureau of Labor Statistics indices. The contract provided that the stated prices were "subject to adjustment for changes upward or downward in Jersey Nuclear's costs." Special Conditions 3 and 16 of the contract provided for increases or decreases in the contract price to reflect changes in the cost of furnishing the uranium fuel due to changes in state and federal regulations, and gross inequities that might result from unusual economic conditions.[2] The dispute involves a claim made by Exxon Nuclear for an upward price adjustment to cover increased production costs, which was denied by the TVA.

The sole issue on appeal is whether the contract may be construed or modified to allow a price adjustment for costs incurred by Exxon Nuclear's parent corporation, Exxon, and a wholly owned division of Exxon, known as Exxon Minerals Company (Exxon Minerals), neither of which was a signatory to the contract between Exxon Nuclear and TVA.

Some background on the corporate structure of Exxon is important to an understanding of the dispute. At the time the contract was entered into between TVA and Exxon Nuclear, then known as Jersey Nuclear Company, Standard Oil of New Jersey, now known as Exxon, was a parent company of Jersey Nuclear. Exxon remains the parent company of Exxon Nuclear. Jersey Nuclear was incorporated to develop a market for uranium fuel, which was to be fabricated from uranium concentrates mined by another Standard Oil of New Jersey subsidiary, a minerals division, which has undergone several name changes and reorganizations within the parent company and is now known as Exxon Minerals. The TVA contract to purchase 1,200,000 pounds of uranium fuel was awarded to Exxon Nuclear following an involved bidding process. Special Conditions 3 and 16 were included in the bid agreement and the contract to insure a continuing supply of uranium to TVA despite fluctuations in production costs. Exxon Nuclear performed fully according to the contract, and supplied uranium fuel to TVA for a number of years.

Shortly after the contract was negotiated between TVA and Exxon Nuclear, Exxon

**2.** *Special Condition No. 3:*

*Federal or State Laws.* If, after the date of bid opening by TVA, changes occur in Federal or state laws relating to OASI, unemployment, sales, transactions, excise, severance, processing, occupation, or transportation taxes (but not including income, excess profits, capital stock, franchise or general property taxes), or workmens' compensation contributions, the Contractor shall supply from its records information satisfactory to TVA showing the effect, if any, of these changes upon the cost per pound of furnishing the uranium concentrates under this contract. Effective on the date the Contractor adopts the changes, the payments by TVA hereunder shall be increased or decreased accordingly. The increase or decrease for each item shall be calculated separately to the nearest one-tenth of a cent per pound and the algebraic sum of the items shall be rounded to the nearest cent per pound.

In the event enactment or implementation after the bid opening date of new or pending Federal or state legislation affecting the uranium mining industry with respect to mine safety, mine working conditions and practices, ventilation, health, occupational hazards, and research, increases the Contractor's cost of producing uranium under this contract, an equitable adjustment will be made in the contract price to compensate Contractor for such increased costs.

*Special Condition No. 16:*

*Adjustments for Gross Inequities.* Any gross inequity that may result from unusual economic conditions, excluding fluctuations in the market price of natural uranium concentrates, not contemplated by the parties at the time of execution of the contract may be corrected by mutual agreement. In case of a claim of gross inequity, each party shall furnish the other with any pertinent information requested. The existence of a claim of inequity or failure of the parties to reach an agreement with respect thereto shall not relieve Contractor from the obligations to continue the delivery of uranium concentrates hereunder, nor relieve TVA of its obligation to pay for concentrates so delivered.

Nuclear entered into a written contract with Exxon Minerals, then known as the mineral department of Humble Oil and Refining Company, a Jersey Standard subsidiary, to purchase uranium fuel. The agreed-upon selling price was Exxon Nuclear's resale price, minus one percent. No provision was included to allow Exxon Minerals to pass along increased costs of mining the uranium to Exxon Nuclear.

In December 1978, Exxon Nuclear filed a claim with TVA for an upward price adjustment due to increased costs in production of uranium fuel. TVA denied the claim on the grounds that Exxon Nuclear had not incurred any increased costs in supplying the uranium fuel, and any increased production costs experienced by Exxon or Exxon Minerals were not recoverable under the terms of the contract, because Exxon Nuclear and Exxon Minerals were separate entities, and only Exxon Nuclear was a signatory to the contract with TVA.

In August of 1981, the TVA Board reversed, finding that there was no meeting of the minds as to the allocation of unanticipated costs, and the applicability of the special conditions to the parent/subsidiary relationship. Applying equitable principles, the Board concluded that "[i]t seemed appropriate to treat Exxon as an intended third party beneficiary" of the contract, and to hold TVA liable on the contract for one-half of Exxon's increased costs.

The district court reversed the TVA Board and granted summary judgment in favor of TVA, dismissing appellant's claim under the Contract Disputes Act. It rejected the Board's finding that the special conditions did not reflect the intent of the parties, and that the parties had not considered the applicability of the conditions to the parent/subsidiary relationship. Instead, the district court found it unnecessary to make a factual inquiry as to the intent of the parties, as the contract and special conditions were clear on their face, and applied only to the contracting parties, TVA and Exxon Nuclear.

## II.

The Contract Disputes Act, 41 U.S.C. § 601, *et seq.,* provides in pertinent part as follows:

[T]he decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

*Id.* at § 609(b)

At oral argument, it was urged strongly that, because of the very narrow standard of review accorded to reviews of Board factual determinations, the district court erred in reversing the TVA Board. However, as the district court correctly noted, there is no factual question to be decided here, and, therefore, there is no presumption of correctness to be accorded the findings of the TVA Board. Contract interpretation is a matter of law for the courts, and findings on questions of law by the TVA Board are neither final nor conclusive. *Blake Construction Company v. United States,* 597 F.2d 1357, 220 Ct.Cl. 56 (1979). Therefore, the Court will conduct a review of the law and decide the case on basic tenets of contract law.

While there may be instances where contract interpretation requires factual findings as to the intent of the parties at the time the contract was entered into, this is not the case here. When clear contract language itself reveals the intent of the parties, it is unnecessary to turn to rules of construction. *Pavlik v. Consolidation Coal Co., Inc.,* 456 F.2d 378, 380 (6th Cir.1972). The contract provisions are clear on their face, and clearly the contract was made solely between Exxon Nuclear and the TVA. The TVA Board itself found that the contract and Special Conditions 3 and 16 were unambiguous and clear on their face, and that only TVA and Exxon

Nuclear, the contracting parties, were intended to be bound by them.[3]

Yet, despite its finding that the plain meaning of the special conditions bound only Exxon Nuclear, the Board attempted to add an implied contract term requiring TVA to compensate Exxon, the parent corporation, for increased production costs in accordance with Special Conditions 3 and 16.

■ In doing so, the TVA Board clearly erred. It is well established that a court cannot add an implied contract term that is inconsistent with an express contract. *Klebe v. United States*, 263 U.S. 188, 44 S.Ct. 58, 68 L.Ed. 244 (1923); *Florida Canada Corp. v. Union Carbide & Carbon Corp.*, 280 F.2d 193 (6th Cir.1960). If this Court were to permit Exxon to recover monies spent on increased production costs, it would in effect be adding a provision to the contract that would obligate TVA to pay increased production costs of Exxon Nuclear's suppliers where these costs are not passed on to Exxon Nuclear. Such an implied contract term would flatly conflict with the express terms of the contract obligating TVA to pay only those increased costs incurred by Exxon Nuclear.

It is possible that the TVA Board was concerned that TVA was receiving a windfall here because it had agreed to pay increased production costs to insure an uninterrupted supply of fuel, and, in spite of the fact that production costs increased during those years, the purchase price did not reflect such increases. The fact remains, however, that under the contract TVA would have had to absorb those increased costs had they been incurred by Exxon Nuclear, the only contracting party.

The Exxon Nuclear contract to purchase uranium fuel from Exxon Minerals was entered into after the contract between TVA and Exxon Nuclear. Exxon Nuclear knew of its protection under the TVA contract, and nevertheless chose to purchase the uranium fuel to be supplied to TVA from Exxon Minerals at a price unrelated to Exxon Minerals' production costs. There were many ways Exxon could have protected itself, but it did not do so. It is not for this Court to speculate on why it did not.

■ It is well established that a parent corporation and a subsidiary are in law separate and distinct entities, and under ordinary circumstances a contract in terms and in name with one corporation cannot be treated as that of both, and a parent corporation will not be liable for the obligations of its subsidiaries. 1 *W. Fletcher Cyclopedia Corporations*, § 43 (rev. perm. ed. 1983). In certain instances, courts have permitted the corporate veil to be pierced. But this is generally done to impose liability on a parent corporation, and only after a strong showing of such control of the subsidiary by the parent to effectively render the subsidiary a mere instrumentality of the parent, and of some fraud connected with the use of the parent/subsidiary corporate form. *See generally Schenley Distillers Corp. v. U.S.*, 326 U.S. 432, 66 S.Ct. 247, 90 L.Ed. 181 (1946); *Volasco Products*

---

3. The TVA Board found, inter alia:
"Reading the contract as a whole it is clear that 'Contractor' in Special Condition 3 refers to the party to whom the contract is let—the party who has contracted to be bound to TVA." [FF 25]
"The Contractor here, within the plain meaning of Special Condition 3, is ENC.... Neither party contends that Exxon ... ever contracted to be bound to TVA on this contract, and there is no evidence that it did. On its face, Special Condition 3 entitles ENC to a price increase only when ... ENC itself incurs increased costs in fulfilling its obligations to TVA under the contract. Appellants do not contend that that has occurred." [FF 26]

"Under Special Condition 16 as it would reasonably be understood in its normal application, the only increased costs TVA can be required to cover are costs incurred by the other contracting party, and costs that party is itself legally obligated to cover.... [T]he clause cannot fairly be construed [to create any duty to strangers to the contract with whom the contracting party dealt in fulfilling the contract] against TVA." [FF 28]
"As both parties construe this contract, Exxon Corporation has not guaranteed ENC's performance. It has not bound itself to TVA. Only 'the Contractor' is contractually bound to TVA, and the Contractor is ENC." [FF 31]

*Company v. Lloyd A. Fry Roofing Co.,* 308 F.2d 383 (6th Cir.1962), *cert. denied,* 372 U.S. 907, 83 S.Ct. 721, 9 L.Ed.2d 717 (1963); *Miles v. American Telephone and Telegraph Company,* 703 F.2d 193 (5th Cir.1983).

At no time has it been intimated that Exxon Nuclear is a mere instrumentality of Exxon, or that it is anything other than a separate and viable corporate entity. By its own admission, Exxon never contracted to be bound by the contract between TVA and Exxon Nuclear. If TVA attempted to enforce the contract provisions against Exxon, this Court would not have the authority to pierce the corporate veil and hold Exxon liable on the contract. By the same token, Exxon cannot benefit by the provisions of a contract of its subsidiary.

### III.

Appellants argue, finally, that the district court erred in rejecting the TVA Board's finding that Exxon was an intended third party beneficiary to the contract.

 First of all, the Board made no such finding. What it did do, after concluding without legal basis that Exxon should recover some of its increased costs, was to further conclude that "Since under my decision TVA is liable to some extent for costs incurred by Exxon ..., though the contract was between TVA and ENC, it seems appropriate to treat Exxon Corporation as an 'intended third-party beneficiary' of the contract to permit it to remain in the case." There is no question that Exxon was not an intended third-party beneficiary of this unambiguous contract, and it is clear as a matter of law that, unless parties intend the object or purpose of the contract to be for the direct benefit of a third party, no duty to a third party is created. *King v. National Industries, Inc.,* 512 F.2d 29 (6th Cir.1975); *Holbrook v. Pitt,* 643 F.2d 1261 (7th Cir.1981).

There is nothing to even suggest that when TVA issued an invitation for bids, or accepted Exxon Nuclear's bid, it intended to benefit Exxon or any other

non-party that might furnish uranium to the contractor. Such a contention is utterly without foundation, and we reject it.

As the district court noted, "Exxon Corporation and ENC chose particular corporate forms of carrying on their business to gain income tax and other regulatory advantages. They must now abide by their choice." *Id.* at 465.

Accordingly, the judgment of the district court is affirmed.