**Leonard AXELBAND and Irving Brown, Trustees of Axelband and Brown Profit Sharing Plan**

v.

**The UNITED STATES**

No. 47–86C.

United States Claims Court.

Feb. 27, 1987.

part to restrict defendant from seeking recovery of such additional expenses as are authorized by law.

Victor M. Javitch, Cleveland, Ohio, for plaintiffs. Richard K. Heiser, of counsel.

Linda T. Maramba, Washington, D.C., with whom were Asst. Atty. Gen. Richard K. Willard, David M. Cohen, and Robert A. Reutershan, for defendant. Rochelle Granat, Attorney-Advisor, Bureau of the Public Debt, Dept. of the Treasury, of counsel.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

The plaintiffs in this case, Leonard Axelband and Irving Brown, acting as Trustees of the Axelband and Brown Profit Sharing Plan, sue for $68,000, representing interest allegedly due on a $500,000 Treasury bill for the period from September 8, 1983, to January 9, 1985.

The case is now before the court on the defendant's motion for summary judgment,[1] filed September 12, 1986, on the plaintiff's response in opposition to the motion, filed December 18, 1986, and on the defendant's reply, filed February 2, 1987.

### The Facts

There does not seem to be any genuine issue between the parties concerning the material facts necessary for the disposition of the case.

On September 9, 1982, the plaintiffs, acting in their capacity as trustees, purchased a 26–week Treasury bill from the Bureau of the Public Debt, Treasury Department, in the amount of $500,000. The account number of the bill was CM4–1–34–0698484–01, and it was due on March 10, 1983.

At the plaintiffs' request, the proceeds of the CM4 Treasury bill mentioned in the preceding paragraph were reinvested at maturity in a 13–week Treasury bill, account number CXO–1–34–0698484–01, in the amount of $500,000. The new CXO bill was issued on March 10, 1983, and it was due on June 9, 1984. The plaintiffs received a statement of account, a discount check, and a reinvestment card after the new bill was issued.

---

1. Defendant's motion is entitled "Defendant's Motion to Dismiss or, in the Alternative, Defendant's Motion for Summary Judgment." Dismissal is sought on the ground that the complaint fails to state a claim upon which relief can be granted. As the motion was submitted with a number of evidentiary attachments, it will be treated as a motion for summary judgment pursuant to RUSCC 12(b).

The proceeds of the CXO Treasury bill were reinvested at maturity, pursuant to the plaintiffs' request, in a new 13–week Treasury bill, account number DC5–1–34–0698484–01, in the amount of $500,000. The DC5 Treasury bill was issued on June 9, 1983, and it was due on September 8, 1983. The plaintiffs again received a statement of account, a discount check, and a reinvestment card after the DC5 Treasury bill was issued.

The DC5 Treasury bill matured on September 8, 1983. As the Treasury Department did not receive a timely request from the plaintiffs for the reinvestment of the proceeds of the DC5 Treasury bill (there is a further reference to this under "Discussion," which follows), the Treasury Department redeemed the bill at its maturity and mailed to the plaintiffs a check for $500,000. Unfortunately, the plaintiffs never received this check.

The plaintiffs apparently were under the impression until October 1984 that the proceeds of the DC5 Treasury bill had been reinvested in another Treasury bill. Consequently, it was not until November 1984 that the plaintiffs first gave the Treasury Department written notification regarding the non-delivery of the September 1983 check for $500,000.

After completing the customary procedures applicable to situations involving lost checks (see 31 C.F.R. Part 245 (1984)), the Treasury Department issued and mailed a replacement check for $500,000 to the plaintiffs on January 7, 1985. The replacement check was received by the plaintiffs on January 9, 1985.

### Discussion

There seems to have been some uncertainty on the part of the plaintiffs concerning the jurisdictional basis for the present action. The plaintiffs' complaint asserts, in what is referred to as the "First Claim," that the action is based upon "Defendant's implied contractual obligation to pay interest on same [the DC5 Treasury bill] and to provide relief for loss of the use of the principal and interest thereon during the"

period between the maturity of the DC5 Treasury bill and the receipt by the plaintiffs of the replacement check for $500,000. In the "Second Claim," the complaint states "that the action of Defendant in failing to compensate Plaintiffs for the interest lost on said Treasury Bill was in violation of the terms and conditions promised by Defendant to Plaintiffs upon the purchase of said Treasury Bill, and as a result, constitutes a breach of the agreement between the parties * * *."

An express contract exists when the terms of a valid agreement between contracting parties are openly stated, either orally or in writing. On the other hand, a contract implied in fact exists when it is possible to infer from the conduct of the parties that there was a meeting of the minds on the terms of a valid agreement between parties. *See Klebe v. United States*, 263 U.S. 188, 192, 44 S.Ct. 58, 59, 68 L.Ed. 244 (1923); Black's Law Dictionary, 292–93 (5th ed. 1979). It is well established that no implied contract may exist when there is an express contract between the parties covering the same subject. *ITT Federal Support Services, Inc. v. United States*, 209 Ct.Cl. 157, 168 n. 12, 531 F.2d 522, 528 n. 12 (1976); *Algonac Manufacturing Co. v. United States*, 192 Ct.Cl. 649, 673, 428 F.2d 1241, 1255 (1970).

The plaintiffs' brief in opposition to the pending motion indicates that the plaintiffs have abandoned their alternative contention that the present action is based upon an express contract between the plaintiffs and the defendant. The brief states that the plaintiffs' cause of action against the defendant is predicated upon an implied contract between the parties. The brief then continues by saying that the "Plaintiffs have dismissed without prejudice their second claim for relief against Defendant that concerned Defendant's breach of its express contract with Plaintiffs."

With respect to the plaintiffs' position that an implied-in-fact contract existed between the plaintiffs and the defendant, it readily appears from the facts of the case that there was nothing in the conduct of

the parties from which it could reasonably be inferred that they reached a meeting of the minds on an agreement whereby (in the absence of a reinvestment of the proceeds of the bill) the Treasury Department promised that the Government would pay interest on the DC5 Treasury bill between the maturity date and the date on which the plaintiffs actually received a redemption check representing the proceeds of the DC5 bill.

Actually, the rights and obligations of the parties in this case were fixed by certain regulations of the Treasury Department and by the notice which the Treasury Department published on May 31, 1983, in announcing the sale of Treasury bills to be issued on June 9, 1983, including the DC5 Treasury bill involved here.[2] Consequently, the jurisdictional basis for the present action is found in that portion of the principal congressional grant of jurisdiction to the court which states that "[t]he United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded * * * upon * * any regulation of an executive department * * * " (28 U.S.C. § 1491(a)(1) (1982)).

The Treasury Department's notice of May 31, 1983, stated as follows in the concluding paragraph:

Department of the Treasury Circulars, Public Debt Series—Nos. 26–76 and 27–76 [31 C.F.R. Parts 349, 350], and this notice, prescribe the terms of these Treasury bills and govern the conditions of their issue. Copies of the circulars and tender forms may be obtained from any Federal Reserve Bank or Branch, or from the Bureau of the Public Debt.

After discussing various Treasury Department regulations dealing with the loss, etc., of government securities (not checks), the plaintiffs contend in their brief, first, that the Government was obligated "to renew and reinvest Plaintiffs' Treasury bill [the DC5 Treasury bill] after Plaintiffs submitted notification to Defendant that they intended to renew their Treasury bill in September of 1983." In this connection, an affidavit attached to plaintiffs' response to the defendant's pending motion states that "Plaintiffs' bookkeeper renewed Plaintiffs' Treasury bill by mail in September of 1983 * * *." On the other hand, an affidavit attached to defendant's pending motion states that a search of the pertinent Treasury Department records did not disclose any record of the receipt by the Treasury Department of a request from the plaintiffs for the reinvestment of the proceeds of the DC5 Treasury bill.

Be that as it may, however, it is really immaterial that the plaintiffs' bookkeeper, sometime in September 1983, mailed a request for the reinvestment of the proceeds of the DC5 Treasury bill. Under 31 C.F.R. § 350.14 (1983), a request for the reinvestment of the proceeds of a Treasury bill (other than a request submitted at the time of the purchase of the bill) was acceptable only if it was received at least 20 business days before the Treasury bill's maturity date, or, in the present case, no later than August 10, 1983, as the DC5 Treasury bill matured on September 8, 1983.

Thus, the plaintiffs' request for reinvestment, when mailed in September 1983, was already too late to be acceptable. Irrespective of whether the reinvestment request was or was not actually received by the Treasury Department, it is clear that the Treasury Department was not under any obligation to reinvest the proceeds of the plaintiffs' DC5 Treasury bill.

The plaintiffs further argue that, if the Government was not under an obligation to reinvest the proceeds of their DC5 Treasury bill, then the Government was under an obligation to pay over the proceeds of the bill to the plaintiffs on September 8, 1983. In this connection, it has been noted previously that the notice which the Treasury Department issued with respect to the sale of the DC5 Treasury bill included "this

---

**2.** The notice announced the sale of two series of Treasury bills: the DC5 series with which we are concerned, and the DZ4 series of 182–day Treasury bills which were to mature on December 8, 1983.

notice" as one of the sources for ascertaining the terms and conditions of the sale. One of the paragraphs of the notice stated in part as follows:

> The bills will be issued on a discount basis under competitive and noncompetitive bidding, and *at maturity their par amount will be payable* without interest. \* \* \* [Emphasis supplied.]

The material from the notice quoted in the immediately preceding paragraph undoubtedly placed upon the Treasury Department an obligation to take prompt and reasonable steps to pay the par amount of the DC5 Treasury bill to the plaintiffs at maturity. The court, however, does not perceive the commitment as a guarantee to get a redemption check into the hands of the plaintiffs on the date of maturity, irrespective of the circumstances.

The defendant's motion and brief are accompanied by an affidavit from a Treasury Department official, with attached copies of Treasury Department records, from which it is plain that a redemption check with a due date of September 8, 1983, representing the proceeds of the plaintiffs' DC5 Treasury bill, was mailed to the plaintiffs at their address in Ohio on or about September 6, 1983. This factual showing is not refuted by the affidavit and other papers which the plaintiffs attached to their brief in opposition to the defendant's pending motion (although the affidavit makes it plain that the plaintiffs did not receive the redemption check with the due date of September 8, 1983). It is true that the plaintiffs' brief contains a statement that "[d]efendant's contention that it issued and mailed a redemption check to Plaintiffs no later than September 8, 1983 is absolutely unsubstantiated." This assertion in the brief, however, cannot be accepted as counter-proof casting doubt on the evidentiary showing made by the defendant in the form of an affidavit and attached copies of Treasury Department records. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160–61, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970); *Holcomb v. United States*, 135 Ct.Cl. 612, 616, 146 F.Supp. 224, 227, *cert. denied*, 352 U.S. 935, 77 S.Ct. 228, 1 L.Ed.2d 163 (1956); RUSCC 56(f).

■ The court concludes that the action of the Treasury Department in issuing and mailing the September 1983 redemption check to the plaintiffs at their address on or about September 6, 1983, and the subsequent action of the Treasury Department in issuing a replacement check on learning that the plaintiffs had not received the first check, adequately discharged the Treasury Department's obligation to pay the par amount of the plaintiffs' DC5 Treasury bill at maturity.

Moreover, the responsibility for the plaintiffs' failure to receive a replacement check until January 9, 1985, seems to rest principally upon the plaintiffs. As the tardy reinvestment request which the plaintiffs mailed in September 1983 to the Treasury Department was obviously unacceptable when mailed under the plain language of 31 C.F.R. § 350.14, and as the plaintiffs thereafter did not receive from the Treasury Department the customary statement of account, discount check, and reinvestment card, there was no reasonable basis for the plaintiffs' belief until October 1984 that the proceeds of the DC5 Treasury bill had been reinvested in another Treasury bill. When the plaintiffs failed to receive a redemption check on or reasonably soon after the maturity date of the DC5 Treasury bill, the plaintiffs should have given the Treasury Department prompt notice regarding the non-delivery of the redemption check, instead of waiting until November 1984.

There seems to be no contention that the Treasury Department, after being notified by the plaintiffs in November 1984 regarding the non-delivery of the September 1983 check, failed to act with reasonable promptness in investigating the matter and issuing a replacement check.

It appears to the court, and the court determines, that the Treasury Department adequately discharged all the obligations which it assumed in the transaction involving the sale by the Treasury Department of the DC5 Treasury bill to the plaintiffs.

## Conclusion

For the reasons previously stated in the order, the court concludes that there is no genuine issue as to any material fact necessary for the disposition of this case, and that the defendant is entitled to a judgment as a matter of law.

Accordingly, the defendant's motion for summary judgment is granted.

The clerk will dismiss the complaint.

No costs.

IT IS SO ORDERED.