**LICHTEFELD–MASSARO, INC.**

v.

**The UNITED STATES.**

**No. 373–86C.**

United States Claims Court.

May 22, 1989.

James U. Smith, III, Louisville, Ky., atty. of record for plaintiff.

Katherine A. Day, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

## MEMORANDUM OF DECISION

HARKINS, Senior Judge.

In its complaint, filed June 12, 1986, Lichtefeld–Massaro, Inc. (LMI) sought reformation of a contract with UNICOR—Federal Prison Industries, Inc. (FPI) for the expansion and remodeling of a UNICOR factory and warehouse located in Lexington, Kentucky. The reformation requested would increase the contract price by $43,176.75, the amount LMI had paid to materialmen for Kentucky state sales tax for material used on the UNICOR project. Jurisdictional issues as to the applicability to plaintiff's claim of the non-appropriated funds doctrine were resolved on May 18, 1988, on denial of defendant's motion to dismiss. Pretrial preparation under RUSCC Appendix G was completed on December 9, 1988, and trial began on March 14, 1989, in Lexington, Kentucky.

All documentary material relative to plaintiff's claim offered by each party was admitted into evidence en masse at the beginning of trial. Plaintiff called two witnesses, the Director of Operations of LMI, and LMI's chief estimator. After plaintiff had completed presentation of its evidence, defendant moved for involuntary dismissal on the ground that upon facts and law plaintiff had shown no right to relief. RUSCC 41(b). After argument, defendant's motion was allowed, with the order

of dismissal to be entered after filing of the transcript.

FACTS

Pursuant to RUSCC 41(b), the following facts applicable to a ruling on the merits against plaintiff are specially found.

1. IFB No. 123–PI–166–5, dated February 25, 1985, for UNICOR Factory Expansion and Conversion, provided the bid opening date would be March 28, 1985, and a pre-bid conference would be held March 13, 1985. The IFB incorporated by reference the standard clause on Federal, State and Local Taxes (FAR 52.229–03, Apr.1984).

2. Lichtefeld–Massaro, Inc. received the IFB during the first week of March 1985. Its estimating division collected quotations from potential subcontractors, some or all of whom included Kentucky state sales tax on materials in their quotations. LMI's bid tabulation forms included quotations with prices that included Kentucky state sales tax. LMI's Summary Sheet for the UNICOR Factory Expansion project was prepared partially on the basis of information submitted by potential subcontractors prior to March 28, 1985, from quotations that included Kentucky state sales tax on the materials involved.

3. A representative of LMI attended the pre-bid conference on March 13, 1985. LMI did not raise question of the applicability of Kentucky state sales tax to materials used on project.

4. On March 28, 1985, one or more potential subcontractors asked whether Kentucky state sales taxes should be included in the quotation. At approximately 10 a.m., LMI's estimator by telephone called the contracting officer and was told that UNICOR was a Federal project and was exempt from state sales tax. At approximately 11 a.m., LMI's estimator by telephone called the contracting officer again and received the same information.

5. On March 28, 1985, LMI's bid estimator completed the LMI Summary Sheet with potential subcontractor quotations that did not include the Kentucky state sales tax on materials. LMI's estimator called some potential subcontractors about the tax issue and inserted on some of LMI's bid tabulation forms changes to show new quotations that did not include Kentucky state sales tax. On March 28, 1985, LMI submitted its bid, which did not include Kentucky state sales tax on material used in the project.

6. Bids were opened at 2 p.m. on March 28, 1985. There were two bids submitted:

| | Base Bid | Alter. 1 | Total |
| --- | --- | --- | --- |
| Frank Messer & Sons Const. Co.<br>4612 Paddock Road<br>Cincinatti, Ohio 45229 | $1,991,000 | $35,000 | $2,026,000 |
| Lichtefeld Massaro, Inc.<br>550 Fourth Avenue<br>Louisville, Kentucky 40202 | $1,941,000 | $42,000 | $1,983,000 |

LMI's base bid was $50,000 lower than the next bid, and LMI's base bid combined with alternate 1 was $43,000 lower than the next bid.

7. On or about April 10, 1985, LMI's estimator by telephone called the contracting officer and was told that UNICOR was a Federal project and exempt from Kentucky state sales tax. LMI's estimator asked for UNICOR's tax exemption number and the contracting officer told him the number used by UNICOR. Approximately one week later LMI's Director of Operations called the contracting officer by telephone, who repeated that UNICOR was exempt from Kentucky state sales tax. When asked to provide UNICOR's tax exemption certificate, the contracting officer refused to provide the certificate for tax exemption on the factory expansion project.

8. The contracting officer executed Standard Form 1442, Solicitation/Offer and Award on May 10, 1985. The contract included the standard clause, FAR 52.229–03,

Federal, State and Local Taxes, which had been included in the IFB. Standard Form 99, Notice of Award of Contract, fixes date of award as May 15, 1985.

9. On June 25, 1985, LMI's Director of Operations and other LMI personnel met with the contracting officer and other UNICOR personnel. The contracting officer stated that UNICOR is exempt from Kentucky state sales tax, told LMI that it could not use UNICOR's tax exemption number on the factory expansion project, and stated that the contract price included the Kentucky state sales taxes on materials used on the project.

10. By letter dated July 3, 1985, LMI submitted a claim to the contracting officer under the disputes clause, FAR 52.233–01, in the amount of $45,000, based on sales taxes to be paid to the State of Kentucky which were not included in the March 28, 1985, bid. By letter dated August 28, 1985, the contracting officer issued a final decision that denied the claim in its entirety.

11. During the period July 30–October 14, 1985, LMI issued extra orders to some of its subcontractors, to amend purchase orders and subcontracts to include amounts for Kentucky state sales taxes on materials supplied in project work. Similar changes were made as to other subcontractors as invoices were presented. LMI's final claim for taxes paid is $42,008.75. There is no dispute that LMI has compensated its subcontractors for applicable Kentucky state sales tax, and that said tax has been remitted to the state.

12. At the time the IFB was issued and at the time the contract was executed by the contracting officer, the contracting officer was aware that the contractor was not exempt from liability for Kentucky state sales tax on purchases of building materials for construction and expansion of the UNICOR facility. When the contracting officer executed the contract on May 10, 1985, the contracting officer had not been told by any representative of LMI that its bid did not include Kentucky state sales tax. The status of documentary and verbal communications did not produce a situation in which the contracting officer should

have known that LMI's bid did not include Kentucky state sales tax.

13. There was no amendment to the IFB prior to bid opening on March 28, 1985, that would change the contractor's obligation to include in its bid all applicable Federal, State and Local taxes and duties. Prior to execution of the contract on May 10, 1985, the contracting officer had no reason to believe that LMI's bid did not include provision for Kentucky state sales tax.

*Conclusions of Law*

RUSCC 41(b) provides, in part:

After the plaintiff has completed the presentation of his evidence, defendant, without waiving its right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).

The Claims Court rule is patterned upon Federal Rules of Civil Procedure (FRCP) 41(b). Precedent under the FRCP is applicable to the Claims Court rule.

■ A dismissal under FRCP 41(b) differs from a directed verdict in a jury trial in that the court need not determine that the defendant is entitled to judgment as a matter of law. Instead, as the finder of fact, the court may resolve disputed issues of fact. *duPont v. Southern Nat. Bank of Houston, Tex.*, 771 F.2d 874, 879 (5th Cir. 1985), *cert. denied*, 475 U.S. 1085, 106 S.Ct. 1467, 89 L.Ed.2d 723 (1986).

■ The purpose of FRCP 41(b), and RUSCC 41(b), is to permit defendant to move for judgment or involuntary dismissal when the court determines, even before hearing the defendant's witnesses, that plaintiff has failed to offer persuasive evidence regarding the necessary elements of its claim. Involuntary dismissal may be

justified in two situations: first, a plaintiff may not have demonstrated in fact or law the elements of the claim, and second, plaintiff's own evidence may have established one of the defendant's defenses as a matter of fact or law. *CMS Software Design Systems, Inc. v. Info Designs, Inc.*, 785 F.2d 1246, 1248 (5th Cir.1986); *see also Romano v. Merrill Lynch, Pierce, Fenner & Smith*, 834 F.2d 523, 529 (5th Cir.1987).

During the course of this case, plaintiff's theories as to the basis of its claim varied substantially. The complaint asserts defendant is estopped from denying the claim because LMI relied to its detriment on representations made by the contracting officer. In its pretrial memorandum of contentions of fact and law, plaintiff added the theory of quantum meruit, in that the contracting officer's representations resulted in UNICOR receiving a benefit equal to the Kentucky state sales taxes paid by LMI. At trial, plaintiff argued that, on the facts, the contracting officer's statements and actions showed a mutual mistake of material fact, and that LMI's failure to include the Kentucky state sales tax in its bid was due to its unilateral mistake. The testimony of plaintiff's witnesses and the documentary evidence in the record do not support any of plaintiff's theories of recovery.

On this contract claim, the jurisdiction of the Claims Court is based upon the Tucker Act, 28 U.S.C. § 1491(a)(1) (1982), and the Contract Disputes Act of 1978, 41 U.S.C. § 609 (1982). Plaintiff had submitted a bid on an IFB for a fixed price construction contract on standard forms. An express contract was entered; that express contract included the standard clause which states that the contract price includes all applicable Federal, state, and local taxes and duties. This clause is not ambiguous; its provisions are, or should be, well understood by contractors doing business with the Government. No provision of the IFB or the contract was amended to suggest that the standard clause was not applicable in accordance with its terms.

■ Plaintiff asserts this claim on the theory of equitable estoppel as well as upon the theory of quantum meruit. It is important to distinguish between the doctrine of equitable estoppel, which operates to prevent the denial of a contract that has been made, and the doctrine of promissory estoppel, which creates a contract that otherwise would not exist. Promissory estoppel is used to create a cause of action; equitable estoppel is used to bar a party from raising a defense or objection it would otherwise have or from instituting an action it is entitled to pursue. *Jablon v. United States*, 657 F.2d 1064, 1068 (9th Cir.1981); *Biagioli v. United States*, 2 Cl.Ct. 304, 307 (1983).

■ Obligations based upon promissory estoppel are founded on contracts implied-in-law, where a duty is created by operation of law without regard to the intent of the parties. The theory of quantum meruit is based upon an implied-in-law contract to compensate unjust enrichment. *Aetna Cas. & Sur. Co. v. United States*, 228 Ct.Cl. 146, 655 F.2d 1047, 1059 (1981). The Claims Court has no jurisdiction to render judgment against the United States based upon a contract implied-in-law. *Merritt v. United States*, 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925); *Lopez v. A.C. & S., Inc.*, 858 F.2d 712, 714–15 (Fed.Cir.1988); *Pacific Gas & Elec. Co. v. United States*, 3 Cl.Ct. 329, 340 (1983), *aff'd*, 738 F.2d 452 (Fed.Cir.1984).

■ This court's Tucker Act jurisdiction includes contracts which are implied-in-fact. 28 U.S.C. § 1491(a)(1) (1982). *Russell Corp. v. United States*, 210 Ct.Cl. 596, 537 F.2d 474 (1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977). Although a contract implied-in-fact is based on conduct, it requires a showing of the same contractual elements as that required to establish an express contract. The requirements of mutuality of intent, and lack of ambiguity in offer and acceptance are the same for an implied-in-fact contract as for an express contract; only the nature of the evidence differs. *Hanson v. United States*, 861 F.2d 728 (Fed.Cir.1988); *Prudential Ins. Co. of America v. United States*, 801 F.2d 1295 (Fed.Cir.), *cert. denied*, 479 U.S. 1086, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1986); *Fincke v. United*

*States*, 230 Ct.Cl. 233, 675 F.2d 289, 295 (1982). The representatives of the United States whose conduct is relied upon must have actual authority to bind the government in contract. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Jascourt v. United States*, 207 Ct.Cl. 955, 521 F.2d 1406, *cert. denied*, 423 U.S. 1032, 96 S.Ct. 562, 46 L.Ed.2d 405 (1975).

■ In this case, there was no contract implied-in-fact to change the incidence of the Kentucky state sales tax. The contracting officer never agreed to exclude Kentucky state sales tax and there was no meeting of the minds on that subject. There was no mutuality of intent, and LMI's conversations with the contracting officer do not manifest an unambiguous offer and acceptance.

■ LMI made an express agreement with UNICOR that the contract price included the Kentucky state sales tax. The existence of an express contract precludes the existence of an implied-in-fact contract dealing with the same subject. *Klebe v. United States*, 263 U.S. 188, 192, 44 S.Ct. 58, 59, 68 L.Ed. 244 (1923).

■ The doctrine of equitable estoppel was applied by the Court of Claims, and is applied by this court, in an appropriate case to prevent the United States from denying the existence of a contractual agreement. The Government may be estopped from denying actions relied upon by others to their detriment, where such action is within the scope of the agent's authority. *American Electronic Laboratories v. United States*, 774 F.2d 1110, 1113 (Fed.Cir.1985); *Manloading & Management Assoc., Inc. v. United States*, 198 Ct.Cl. 628, 461 F.2d 1299 (1972); *Branch Banking & Trust Co. v. United States*, 120 Ct.Cl. 72, 98 F.Supp. 757, 758, *cert. denied*, 342 U.S. 893, 72 S.Ct. 200, 96 L.Ed. 669 (1951). For the doctrine of equitable estoppel to be applied, however, the facts must show the following elements to be present: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. *Emeco Indus. Inc. v. United States*, 202 Ct.Cl. 1006, 485 F.2d 652, 657 (1973); *United States v. Georgia–Pacific Co.*, 421 F.2d 92, 96 (9th Cir.1970).

■ The facts of this case do not demonstrate the elements required for an equitable estoppel. LMI's conversations with the contracting officer do not show an independent agreement between the parties relative to the state sales tax. The contracting officer did not know that LMI's bid did not include the Kentucky state sales tax. Plaintiff made no showing that the contracting officer intended to authorize LMI to exclude Kentucky state sales tax from its bid. When the contracting officer provided UNICOR's tax exemption number to LMI, no authorization was given to LMI to use the number for tax exemption in contract work. In the absence of a formal amendment to the IFB and to the contract relative to inclusion of state sales tax in the contract price, LMI's reliance on the statements the contracting officer allegedly made to LMI's representative is unreasonable.

■ Plaintiff's contention that there was a mutual mistake apparently was based on the theory that the contracting officer also believed that UNICOR was a tax exempt entity for the purposes of work done under the contract. Plaintiff did not pursue the mutual mistake of material fact theory. In any event, the evidence does not establish that at any time the contracting officer was mistaken as to LMI's responsibility to include the Kentucky state sales tax in the contract price.

■ Reformation of a contract on the basis of a unilateral mistake is an equitable remedy that is available only if the contracting officer knew, or should have known, of the mistake made by the bidder. *Bromley Contracting Co. v. United States*, 794 F.2d 669, 672 (Fed.Cir.1986); *Aydin Corp. v. United States*, 229 Ct.Cl. 309, 669 F.2d 681, 686 (1982). To qualify as a mistake in bids, the mistake must be a

clear cut clerical or arithmetical error, or misreading of the specifications. *Ruggiero v. United States,* 190 Ct.Cl. 327, 420 F.2d 709, 713 (Ct.Cl.1970).

In this case there were two bids. LMI's bid was $1,941,000 for the principal work. LMI's base bid was $50,000 lower, and for the alternate work was $43,000 lower, than the next bidder. The disparity in the bids was not so great as to constitute constructive notice of a possibility of error by the contractor. "Mere disparity between bids does not automatically lead to the conclusion that the test for constructive notice has been satisfied." *Aydin Corp. v. United States,* 229 Ct.Cl. 309, 669 F.2d 681, 686 (1982); *Connelly Containers Inc. v. United States,* 7 Cl.Ct. 423, 427 (1985).

There was no mistake in LMI's bid that would support reformation of the contract. There were no clerical or mathematical errors, nor was there a misreading of the specifications. LMI submitted exactly the bid it intended to submit. There was no error in the bid LMI submitted that the contracting officer should have been alerted to by the circumstances. There was no overreaching or deception on the part of the contracting officer.

Plaintiff is an experienced contractor, and must assume responsibility for its own actions. If plaintiff wanted to alter the clear contract provision, it should have obtained written confirmation of the change it sought. The verbal communications with the contracting officer in plaintiff's evidence did not produce a situation in which LMI reasonably could have believed that its bid should not include Kentucky state sales tax.

The testimony and documentary evidence in the record establishes that plaintiff has shown no basis for relief. Defendant has no liability under any of plaintiff's theories. Accordingly, the Clerk is directed to dismiss the complaint. Defendant shall recover its costs.