**LOCKHEED MARTIN CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 96–161T.**

United States Court of Federal Claims.

March 30, 2001.

William F. Nelson, Atlanta, Georgia, with whom was Daniel J. King, for plaintiff.

Stuart J. Bassin, Washington, D.C., with whom were Assistant Attorney General Loretta C. Argrett, Chief, Court of Federal Claims Section, Mildred L. Seidman, Steven I. Frahm, and Edward L. Froelich, for defendant.

### Opinion and Order

WEINSTEIN, Judge.

Plaintiff, Lockheed Martin Corporation (Lockheed), seeks a refund of $63,745,727 in federal income taxes for tax years 1984–1988. The case is before the court on the parties' cross-motions for partial summary judgment on the so-called "subcontracts and materials issue."[1] The cross-motions concern plaintiff's claim that it is entitled to include, in calculating a tax credit, approximately $200 million in payments to various subcontractors as qualified research expense (QRE) for in-house research expenses for supplies (Supply QRE) pursuant to section 41(b)(1)(A)(2)(ii) of the Internal Revenue Code (IRC).[2] Plaintiff's basic contention is that any property received that is tangible is a supply. Defendant argues, essentially, that the expenses are for contract research by subcontractors, and not qualified as contract research expenses (Contract Research QRE) because the subcontractors bore the risk of failure.

The court deems oral argument unnecessary. The court concludes that the facts proffered by the parties are insufficient to demonstrate whether plaintiff met the statutory test for Supply QRE, because it is not clear that it used the property it received from its subcontractors, even if tangible, in the conduct of qualified research. Therefore, the court denies both motions for partial summary judgment. Disputed material facts regarding whether some of the property was not qualified because depreciable also require denial of the cross-motions. Finally, disputed facts regarding the precise costs plaintiff incurred in obtaining the property warrant denial of plaintiff's motion.

### Facts

The following facts, taken from the parties' stipulations and RCFC 56(d) submissions, are undisputed unless otherwise noted.

Although plaintiff's overall complaint seeks QRE incurred in performing over 200 different contracts with the government and private entities, the parties have agreed to litigate the subcontracts and materials issues presented here by means of a single contract, with the United States Department of the Navy (Navy), to design, fabricate, and test a Supersonic Low Altitude Target (SLAT) device. This device was a reusable missile that would mimic the speed and travel path of a Soviet anti-ship missile. Sailors would practice using their ships' anti-missile defense systems on SLAT device targets. However,

---

1. As many as fourteen issues have been identified in the overall case. One has been decided, and two abandoned by the parties. The parties seek a judgment on the subcontracts and materials issue in order to facilitate possible settlement on other issues in the case. By "subcontracts and materials," the parties refer to the amounts plaintiff allegedly paid to subcontractors.

2. All section references, unless otherwise noted, are to title 26 of the United States Code as in effect in 1986, codifying the IRC of 1954, as amended. During the period at issue, the applicable research expense provision of the IRC was renumbered several times, but remained substantively identical. Therefore, the court refers throughout to section 41(b).

the program never proceeded pas the full-scale design phase.

As designed, a SLAT device had three main sections. The front section (the "forebody") was to be cone-shaped and contain all of the guidance, electronic, and parachute-recovery components of the device. The middle section would contain a "ramjet," one of the device's two propulsion systems. The rear section would contain both a solid rocket fuel motor (rocket) to bring the device up to speed and the ramjet's combustion chamber. Each of the three sections contained subsystems. Each section and subsystem is referred to as a "component."

Although plaintiff was the prime contractor and had overall responsibility for providing the Navy with a functioning SLAT device, many of the components of the device were designed and built by subcontractors. For example, the Northrop Corporation (Northrop) was to produce guidance and ground support equipment for the forebody; the Thiokol Corporation (Thiokol) was to provide the rocket motor; and the Marquardt Corporation (Marquardt) was to manufacture the ramjet.

Producing many of the components clearly required technologically-challenging research and design efforts. For example, the Northrop subcontract required it to:

> [C]onduct a program ... for the design, development, fabrication, assembly, inspection, test, acceptance, qualification, documentation and supply of the YAQM–127A Supersonic Low Altitude Target System (SLAT) Full Scale Engineering Development (FSED) phase avionics, recovery system and support equipment together with software and services ....

Defendant's Motion, App. B at 9.

The Northrop subcontract provides that it is for both "supplies" and "services," Defendant's Reply, App. C at 23. It also contains a contract line item (CLIN) showing that forebodies cost $236,368 each, *id.* at 25, and provides that "[f]orebody deliveries may be billed individually upon acceptance at a billing rate of $236,368 each." *Id.* at 27. Payments are due even if Northrop delivers no forebody, but only a design or test result.

For example, the subcontract requires plaintiff to pay Northrop $1,500,000 on July 31, 1985, for the "PDR Complete" (for completion of the program design review), *see id.,* when no forebody or other component is to be delivered. *See* Jt.App. Vol. I at 113–14, Dep. at 327–28 (describing PDR as preliminary design review).

Whether for achievement of a design milestone or for delivery of a completed component, each of plaintiff's payments was contingent upon the subcontractor's success: the subcontracts "placed the subcontractor ... at risk [of non-payment] until the contract requirements were successfully performed and Lockheed Martin accepted the work done by the subcontractor ...." Jt. Stip. ¶ 180.

Plaintiff claims that it used the delivered components for its own engineering and research for the SLAT program. Although the facts are unclear, by "engineering and research" plaintiff means assembling and flight testing complete SLAT devices on the Navy's test rage from these components. What these flight tests achieved is unclear. For example, one test demonstrated that a component performed inadequately because of faulty workmanship. Jt.App. Vol. I at 55, Dep. at 157 (power supply failed because of workmanship). Another flight test allegedly caused plaintiff to take "corrective action, redesign, retrofit, [and] rebuild targets." Jt. App. Vol. I at 30, Dep. at 118.

### Standard of Review

Summary judgment is appropriate when the court finds both that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RCFC 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The moving party bears the burden of demonstrating the absence of genuine issues of material fact." *Dairyland Power Coop. v. United States,* 16 F.3d 1197, 1202 (Fed.Cir. 1994).

"In a tax refund case, the taxpayer bears the burden of establishing the right to a refund." *Abrahamsen v. United States,* 228 F.3d 1360, 1364 (Fed.Cir.2000). Therefore,

summary judgment in plaintiff's favor is appropriate only if it provides evidence of undisputed facts sufficient to entitle it to judgment as a matter of law, even if defendant fails to present opposing evidence. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented"); *Broomall Indus. Inc. v. Data Design Logic Sys., Inc.,* 786 F.2d 401, 405 (Fed.Cir.1986) (summary judgment may not be granted when movant's evidence insufficient to entitle it to judgment as a matter of law). Even if no material facts are in dispute, the court must determine if either party is entitled to judgment as a matter of law. *Bankers Trust N.Y. Corp. v. United States,* 225 F.3d 1368, 1372 (Fed.Cir.2000).

An issue of material fact preventing summary judgment is one that is relevant and necessary to establishing or defending against the claim and that may affect the outcome of the decision. *See KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,* 997 F.2d 1444, 1449–50 (Fed.Cir.1993). An issue is genuine if a reasonable finder of fact could decide the question in favor of the non-movant. *See Opryland USA Inc. v. Great Am. Music Show, Inc.,* 970 F.2d 847, 850 (Fed. Cir.1992). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988). "When both parties move for summary judgment, each party's motion must be evaluated on its own merits and all reasonable inferences must be resolved against the party whose motion is under consideration." *Promac, Inc. v. West,* 203 F.3d 786, 788 (Fed.Cir.2000).

### Discussion

Section 41(a) allows a tax credit "equal to the sum of—(1) 20 percent of the excess (if any) of—(A) the *qualified research expenses* for the taxable year, over (B) the base amount, and (2) 20 percent of the basic research payments determined under subsection (e)(1)(A)." (Emphasis added). Section 41(b)(1) defines "qualified research expenses" (QRE) as the sum of "in-house research expenses" and "contract research expenses". In-house research expenses include "any amount paid or incurred for supplies *used in the conduct of qualified research* ...." § 41(b)(2)(A)(ii) (emphasis added). Plaintiff contends that certain subcontract expenses constitute QRE for supplies (Supply QRE) under this provision.

"Qualified research" is defined as:

... research—(A) with respect to which expenditures may be treated as expenses under section 174, (B) which is undertaken for the purpose of discovering information—(i) which is technological in nature, *and* (ii) the application of which is intended to be useful in the development of a new or improved business component of the taxpayer, *and* (C) *substantially all* the activities of which constitute elements of a process of *experimentation* for a purpose described in [section 41(d)(3) ].

§ 41(d)(1) (emphasis added). Section 174 research expenses are "research and development costs in the experimental or laboratory sense." Treas. Reg. § 1.174–2(a)(1). Section 41(d)(3) provides: "Research shall be treated as conducted for a purpose described in this paragraph if it relates to—(i) a new or improved function, (ii) performance, or (iii) reliability or quality."

Section 41(b)(2)(C), the sole provision at issue in the cross-motions for summary judgment, provides: "The term 'supplies' means any tangible property other than—(i) land or improvements to land, and (ii) property of a character subject to the allowance for depreciation."

Read together, these provisions clarify that to claim "in-house research expenses" for supplies (Supply QRE) plaintiff must demonstrate that it acquired non-depreciable tangible property and used it to engage in experimental or laboratory research to discover

technological information, substantially all of the activities of which constituted elements of a process of experimentation (to develop a new or improved function, performance, reliability or quality of a new or improved business component).

The parties have stipulated, *see* Jt. Stip. ¶ 180, that each of plaintiff's payments to subcontractors was contingent upon the subcontractor's success. A payment contingent upon the success of the research it is not Contract Research QRE. *See Fairchild Indus., Inc. v. United States,* 71 F.3d 868, 870 (Fed.Cir.1995); Treas. Reg. § 1.41–2(e)(2).

However, Contract Research QRE is not directly the issue here. The sole dispute before the court is whether plaintiff can claim as Supply QRE the expenses of acquiring the tangible components delivered under its subcontracts, and the scope of the term "components."

Defendant contends that plaintiff's subcontract and materials expenses do not meet the statutory definition of Supply QRE, but only the definition of "contract research" under section 41(b)(3)(A), which plaintiff may not claim because this term does not include "[a]ny research to the extent funded by any grant, contract, or otherwise by another person (or governmental entity)." § 41(d)(4)(H).

Plaintiff claims that because it obtained no rights to its subcontractors' research, it was not performed on plaintiff's behalf and therefore is not Contract Research QRE. "Qualified research is performed on behalf of the taxpayer if the taxpayer has a right to the research results." Treas. Reg. § 1.41–2(e)(3); *see id.* § 1.41–2(e)(1) (requiring that payments be "for the performance on behalf of the taxpayer of . . . [q]ualified research . . . ." to be Contract Research QRE).

### A. Use in the conduct of qualified research

Plaintiff contends, in a vacuum, that it may claim all the expenses at issue here as Supply QRE if it is conceded that the components are tangible property within the meaning of

section 41(b)(2)(C). Plaintiff, apparently referencing section 41(d)(4)(A), recognizes that not all of these expenses may be Supply QRE because use of the supplies may have taken place after production of the SLAT devices began. *See* Plaintiff's Motion at 4 ("Defendant may, in a subsequent motion, seek to reduce some portion of the subcontract and material expenses on some other basis, such as whether these expenses relate to post-production activity.").

However, the central question in determining whether a taxpayer may claim Supply QRE is not simply whether the supplies are tangible, but also, more generally, whether the taxpayer has used supplies "in the conduct of qualified research." § 41(b)(2)(A)(ii). To demonstrate this, plaintiff must establish that its assembly and flight testing of the SLAT device was research in the laboratory or experimental sense, through which plaintiff discovered new information of a technical nature that it used to improve the function, performance, reliability or quality of the SLAT device. *See* § 41(d). It also must demonstrate that its assembly and flight testing was not "routine or ordinary testing or inspection for quality control," § 41(d)(4)(D)(v), or conducted after the beginning of commercial production. *See* § 41(d)(4)(A).[3] If, on the other hand, defendant demonstrates that plaintiff's assembly and flight testing do not constitute use in the conduct of qualified research within section 41(d) (or are excluded under subsections (4)(A) or (4)(D)(v)), it would be entitled to summary judgment.

The facts are insufficiently developed for the court to make these determinations. For example, some flight tests disclosed design deficiencies that apparently caused plaintiff to take "corrective action, redesign, retrofit, [and] rebuild targets." Jt.App. Vol. I at 30, Dep. at 118. Viewed in the light most favorable to plaintiff, such corrective action, redesign, retrofitting and rebuilding could constitute use of components in experimental research to discover technological information that aided it in improving the

---

**3.** Section 41(d)(4)(A) provides that "qualified research" does not include "[r]esearch after commercial production . . . . Any research conducted after the beginning of commercial production of the business component."

function, performance, reliability, or quality of the SLAT device under section 41(d). However, other flight tests may have been used merely to determine whether a component performed adequately under the contract or evidenced poor workmanship. Jt. App. Vol. I at 55, Dep. at 157 (test indicated that power supply failed because of faulty workmanship). Viewed in the light most favorable to defendant, such routine or ordinary testing or inspection for quality control is not "use[ ] in the conduct of qualified research." *See* § 41(d)(4)(D)(v).

The depositions in the record indicate that the issue raised by the court was not addressed in conducting the depositions. Because the facts developed do not allow the court to determine the central question of "use[ ] in the conduct of qualified research," it denies both motions for summary judgment; neither party has come forward with sufficient facts to entitle it to judgment as a matter of law. *See Adickes,* 398 U.S. at 160, 90 S.Ct. 1598; *Bankers Trust,* 225 F.3d at 1372; *Broomall,* 786 F.2d at 405.

## B. Plaintiff's cross-motion for summary judgment

Plaintiff must establish not only "use[ ] in the conduct of qualified research," as discussed above, but also that no expenses claimed as Supply QRE were spent on non-qualified expenses such as subcontractor research or depreciable property. Plaintiff fails to do either.

First, plaintiff argues that the CLINs in its subcontracts distinguish between expenses incurred for components and expenses incurred for subcontractor research, and that its Supply QRE claim includes only expenses incurred for the former. However, plaintiff admits that its claim, developed using "abbreviated data" to assess the subcontracts' CLINs, in fact failed to exclude all expenses associated with CLINs for subcontractor research. Plaintiff's Proposed Findings of Uncontroverted Fact ¶ 52. Plaintiff argues that because it did not (and could not, under the contingent on success test, Treas. Reg. § 1.41–2(e)(2)) treat its subcontractor research expenses as Contract Research QRE, all its subcontract and material expenses, including those for subcontractor research, actually were for components. Plaintiff contends, on this basis, that the admission is not fatal to its motion for summary judgment. Plaintiff's justification fails. That plaintiff cannot claim Contract Research QRE for some portion of its subcontract expenses does not, per se, demonstrate that it is entitled to a credit for Supply QRE for all of its subcontract expenses, and plaintiff cites no authority or basis for this proposition.

Second, viewed in the light most favorable to defendant, the record supports defendant's claim that plaintiff included, in at least one instance, payments for non-qualified Contract Research QRE in its Supply QRE claim. Plaintiff's subcontract with Northrop required it to make milestone payments. $1,500,000 was due on July 31, 1985, for the completion of the preliminary design review. This is not tangible property, as required by section 41(b)(2)(C), and no tangible property appears to have been transferred to plaintiff at that time. Plaintiff has excluded only $1,035,338 of its total payments to Northrop from its claimed Supply QRE, Jt. Stip. ¶ 179, on the grounds that those payments were for research, not components. Because the entire amount of $1,500,000 is non-allowable Contract Research QRE, the difference between $1,500,000 and $1,035,338 is not, as plaintiff claims, Supply QRE.

The record before the court does not allow it to determine how many other payments plaintiff improperly claims as Supply QRE. None of the first seven milestone payments in the subcontract between plaintiff and Northrop, totaling $7,740,488, appear to require the delivery of any component. *See* Defendant's Reply, App. C at 27–28. Viewed in the light most favorable to defendant, these payments are not incurred for "tangible property" meeting the statutory definition of supply and as such may not be included in plaintiff's Supply QRE claim.

Third, the record, viewed in the light most favorable to defendant, indicates that some of the property plaintiff received from its subcontractors was not eligible as Supply QRE because it was depreciable. *See* § 41(b)(2)(C)(ii) (expenses paid or incurred

for depreciable property cannot be Supply QRE). Tangible property is depreciable if it is subject to "exhaustion, wear and tear (including a reasonable allowance for obsolescence) ... [and is] used in the trade or business" of the taxpayer. § 167(a); *see also* Treas. Reg. § 1.167(a)–2.

Plaintiff's employee, Mr. Strobeck, testified at his deposition that, when plaintiff dissolved its subcontract with Northrop, plaintiff received, among other things, "the equipment ... out of Northrop's plant into [plaintiff's] plant in order to finish the job." Jt.App. Vol. I at 103, Dep. at 285. Equipment used to make a part of the SLAT device and kept by plaintiff to make additional SLAT devices appears to be tangible property of a character subject to the allowance for depreciation, *see* § 167(a); Treas. Reg. § 1.167(a)–2, which plaintiff may not claim as Supply QRE. Because plaintiff has failed to establish (or allege) that no amounts were paid for such equipment or any amounts paid were excluded from its Supply QRE claim, its motion for summary judgment must be denied.

### C. Defendant's motion for summary judgment

The statute broadly defines the term "supplies" as "any tangible property ...." § 41(b)(2)(C). Defendant's motion for summary judgment argues that the components plaintiff received from its subcontractors, for example, the forebody(s), ramjet(s), and rocket(s) plaintiff received from Northrop, Thiokol, and Marquardt, respectively, are not "supplies," not because they are not tangible or because they are not depreciable, or because they were not "used in the conduct of qualified research," but because the sole deliverable under the subcontracts was Contract Research QRE, the type of QRE that is not allowable when the subcontractor bears the risk of failure.

Viewed in the light most favorable to plaintiff, the subcontracts demonstrate that plaintiff received some components consisting of tangible property, as well as research and

other services. For example, the Northrop forebody subcontract contains a CLIN showing that forebodies cost $236,368 each, Defendant's Reply, App. C at 25, and provides that "[f]orebody deliveries may be billed individually upon acceptance at a billing rate of $236,368 each." *Id.* at 27. Therefore, defendant's motion for summary judgment on these grounds is denied.[4]

### CONCLUSION

The factual record developed by the parties is insufficient to determine whether plaintiff's use of components qualifies as "use[ ] in the conduct of qualified research" and thus precludes summary judgment in favor of either party. Another unresolved genuine dispute, regarding whether plaintiff's Supply QRE claim includes only payments for non-depreciable tangible property, precludes summary judgment in plaintiff's favor. Therefore, both motions for summary judgment are denied.

At the status conference scheduled for Tuesday, April 17, 2001, at 2:00, Eastern Time, the parties shall be prepared to discuss whether they can stipulate to: (1) whether the claimed Supply QRE was for tangible property that was non-depreciable and "used in the conduct of qualified research", and (2) the amount of the QRE associated with such property. Absent stipulation, the parties will be required to propose a schedule for additional summary judgment briefing or trial of these issues. In addition, the parties shall be prepared to discuss the issues raised in their joint status report filed February 21, 2001, in plaintiff's motion for a status conference filed March 26, 2001, and in defendant's response to plaintiff's motion for a status conference filed March 29, 2001.

Plaintiff's counsel must notify the court at least five days prior to the hearing (call Shirley Scott at 202–219–9655) if participation by conference call would be more convenient.

---

4. Again, even if the components were tangible property, this does not dispose of the issue of whether they are, as plaintiff argues, Supply QRE, since the test of whether they were "used in the conduct of qualified research" also must be met.