**H.N. WOOD PRODUCTS, INC.**

v.

**The UNITED STATES**

No. 98–433C.

United States Court of Federal Claims.

Dec. 19, 2003.

480

Gary G. Stevens, Washington, DC, attorney of record for the plaintiff. Kevin R. Garden, of counsel.

John S. Groat, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for the defendant. Gene Earl, Milwaukee, WI, U.S. Department of Agriculture, of counsel.

## OPINION

YOCK, Senior Judge.

This contract case is before the Court on the Plaintiff's Motion for Summary Judgment on the Issue of Liability. The Court has jurisdiction over the subject matter of this suit under the Tucker Act, 28 U.S.C. § 1491 (2000). Plaintiff H.N. Wood Products, Inc. ("Plaintiff" or "H.N. Wood") brought this action against the United States ("Defendant" or "Government"), arguing that the United States Forest Service, Department of Agriculture ("Forest Service") breached the parties' timber sale contract by violating the implied duty to cooperate and not to hinder its performance. The Plaintiff alleges that the Forest Service wrongfully suspended its contract in response to an earlier lawsuit in which the United States District Court for the Southern District of Illinois invalidated the preaward environmental assessment that the Forest Service had performed for the timber sale area covered by the Plaintiff's contract. The Plaintiff's Motion for Summary Judgment on the Issue of Liability is DENIED, because there are genuine issues of material fact that require further ventilation.

*Factual Background ·*

*The Contract*

On September 7, 1993, the Forest Service awarded the Ridge Top Timber Sale Contract No. 6653 ("the Contract") to Plaintiff H.N. Wood. (Pl.'s Proposed Findings of Uncontroverted Fact, ¶ 1). The Contract stipulated an award date of September 14, 1993, and a termination date of November 30, 1997. (Contract Form FS 2400–6T, p. 101). Under the Contract, H.N. Wood was entitled to purchase, cut, and remove certain pine trees from a specified area of the Shawnee National Forest, located in southern Illinois, in order to clear space for new growth. *Id.* The Contract advertised the sale of 1,147 MBF (thousand board feet) of "sawtimber" and 3,914 cords of "pulpwood." (Pl.'s Proposed Findings of Uncontroverted Fact, ¶ 2). Ac-

cording to H.N. Wood, "pulpwood" is a term used to identify trees that are only capable of producing a pulp product that is less valuable than lumber. (Pl.'s Mot. for Summ. J. at 2).

*The Contract Suspension*

This dispute arose after the Forest Service suspended H.N. Wood's Contract on April 13, 1995, shortly after receiving two decisions from the United States District Court for the Southern District of Illinois in *Mark Donham v. United States Forest Service,* No. 93–CV–4172–JPG. (Pl.'s Proposed Findings of Uncontroverted Fact, ¶¶ 3–8). In that case, environmental activists challenged the validity of the preaward environmental assessments performed by the Forest Service under the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321–4370f (West 1994 & Supp.2003), for a group of timber sale contracts that included Plaintiff's Ridge Top Contract and several others. (Pl.'s Proposed Findings of Uncontroverted Fact, ¶¶ 3–8).

In its first decision, the district court in *Mark Donham* granted summary judgment to the plaintiff on one of his challenges to the adequacy of the Forest Service's preaward environmental assessment. *Id.,* No. 93–CV–4172–JPG, slip op. at 25 (S.D.Ill. Jan. 24, 1995). While the district court rejected several of the plaintiff's challenges to the Forest Service's environmental assessment, *see id.,* the court agreed with the plaintiff that the Forest Service had "acted arbitrarily and capriciously in not considering specifically the cumulative effects" of proposed projects for the Shawnee National Forest as a part of its environmental assessment. *Id.* at 24; *see also* Pl.'s Proposed Findings of Uncontroverted Fact, ¶ 4. The district court directed the Forest Service to correct the deficiencies in its preaward environmental assessment. *Mark Donham,* slip op at 25; *see also* Pl.'s Proposed Findings of Uncontroverted Fact, ¶ 5. This ruling affected Plaintiff's Contract, which was one of the proposed projects covered by the Forest Service's environmental assessment for the Shawnee National Forest.

Over the next two months, the Forest Service revised its environmental assessment, requested that the district court review it, declare it sufficient, and allow the timber sales to proceed. (Pl.'s Proposed Findings of Uncontroverted Fact, ¶ 6). On March 30, 1995, the district court responded with another decision in which it rejected the Forest Service's revised environmental assessment. *Mark Donham,* No. 93–CV–4172–JPG, slip op. at 3 (S.D.Ill. Mar. 30, 1995). Instead, the district court ordered the Forest Service to issue a new environmental assessment and notice of its decision prior to proceeding with any timber sales in the Shawnee National Forest. (Pl.'s Proposed Findings of Uncontroverted Fact, ¶ 7). The district court's order thus vacated the Forest Service's original environmental assessment, decision notice, and Finding of No Significant Impact for the Shawnee National Forest, which included the timber sale area in H.N. Wood's Contract. *Mark Donham,* slip op. at 3.

The district court's decision in *Mark Donham* prompted the Forest Service to formally suspend the Contract. (Pl.'s Proposed Findings of Uncontroverted Fact, ¶ 8). On April 13, 1995, the Forest Service notified H.N. Wood of the suspension:

This suspension is made necessary by order of Chief Judge J. Phil Gilbert, United States District Court for the Southern District of Illinois, vacating the environmental assessment, decision notice and Finding of No Significant Impact for the OA–6 Ecological Restoration Project. Having found these documents inadequate, the Forest Service cannot proceed with the timber sale until a new environmental document and decision notice are approved * * *.

*Id.*

While H.N. Wood developed these basic underlying facts in its Proposed Findings of Uncontroverted Fact, it failed to provide any details related to the Forest Service's preaward environmental assessment or its subsequent efforts to perform an adequate cumulative effects analysis as part of a new environmental assessment. H.N. Wood's Statement of Uncontroverted Fact also leaves many gaps in the factual record related to the timing and length of the suspension. For instance, H.N. Wood's Complaint alleges that the Forest Service suspended its Contract "[a]lmost immediately after award"

in September 1993, Complaint at ¶¶ 6–7, and its motion asserts that the Contract was still under suspension as of the date of its filing. (Pl.'s Mot. for Summ. J. at 4). H.N. Wood, however, has not presented evidence to prove these assertions. The Plaintiff alludes to several of these material facts in its motion, but none of these factual assertions are supported in the manner as required by United States Court of Federal Claims Rule (RCFC) 56. In its motion, H.N. Wood labels many of these facts as "background" and "not essential to resolve the issue of liability." (Pl.'s Mot. for Summ. J. at 1, n. 1.) The Court disagrees with H.N. Wood's assessment and will consider as undisputed facts only those assertions that the Plaintiff supported in the manner provided for in RCFC 56. The Government, for its part, denied many of the Plaintiff's factual assertions in its Answer to the Complaint. The Government, however, neither disputed any of H.N. Wood's proposed findings nor offered any proposed factual findings of its own in response to the Plaintiff's motion.

The Court's legal discussion section addresses these and several other gaps in the undisputed factual record. As discussed in more detail below, it is not appropriate for the Court to grant summary judgment given the insufficient factual record in this case. H.N. Wood, as the plaintiff, bears the initial burden of establishing the absence of any genuine issues of material fact, a burden that the Plaintiff has not met in this case. Therefore, the insufficient factual record in this case precludes entry of summary judgment on H.N. Wood's claim.

*Plaintiff's Damages Claim Arising from the Suspension*

On December 2, 1996, H.N. Wood submitted its claim for damages in the amount of $417,800.65 arising from the Forest Service's material breaches and wrongful suspension of the Contract. (Pl.'s Proposed Findings of Uncontroverted Fact, ¶ 9). The Contracting Officer denied all damages in a letter dated May 13, 1997. (Pl.'s Proposed Findings of Uncontroverted Fact, ¶ 10, Ex. G). The Contracting Officer concluded that the suspension was not wrongful because Contract Clause CT6.01 authorized the Forest Service

to suspend operations in order to comply with a court order. (*Id.*). Contract Clause CT6.01 states:

> CT6.01—Interruption or Delay of Operations. (6/90) Purchaser agrees to interrupt or delay operations under this contract, in whole or in part, upon the written request of Contracting Officer:
>
> (a) To prevent serious environmental degradation or resource damage that may require contract modification under CT8.3 or termination pursuant to CT8.2;
>
> (b) To comply with a court order, issued by a court of competent jurisdiction;
>
> \* \* \* \* \* \*
>
> Purchaser agrees that in the event of interruption or delay of operations under this provision, that its sole and exclusive remedy shall be (1) Contract Term Adjustment pursuant to BT8.21, or (2) when such an interruption or delay exceeds 30 days during Normal Operating Season, Contract Term Adjustment pursuant to BT8.21, plus out-of-pocket expenses incurred as a direct result of interruption or delay of operations under this provision. Out-of-pocket expenses do not include lost profits, replacement cost of timber, or any other anticipatory losses suffered by Purchaser. Purchaser agrees to provide receipts or other documentation to the Contracting Officer which clearly identify and verify actual expenditures.

Moreover, the Contracting Officer noted that Contract Clause CT6.01 limits the Government's liability for damages resulting from a suspension. Under this provision, H.N. Wood would only be entitled to a Contract Term Adjustment pursuant to Clause BT8.21, plus documented out-of-pocket expenses incurred as a direct result of the suspension, not to include lost profits, replacement timber costs, or any other anticipatory losses. *Id.* The Contracting Officer concluded that none of H.N. Wood's claimed damages fell into the category of out-of-pocket expenses recoverable under Contract Clause CT6.01. (Pl.'s Proposed Findings of Uncontroverted Fact, ¶ 10, Ex. G). H.N. Wood timely appealed this denial with its

Complaint filed on May 11, 1998. (*Id.* at ¶ 11).

*Plaintiff's Complaint and Motion for Summary Judgment on Liability*

H.N. Wood's Complaint alleges that the Forest Service's suspension of this Contract constitutes a material breach of the Contract's express terms and a breach of the Forest Service's implied duty to cooperate and not to hinder the contractor's performance. (Complaint at ¶ 13). H.N. Wood asserts that the Forest Service caused this suspension to occur by failing to properly perform its preaward environmental obligations as mandated by statute. (Pl.'s Mot. for Summ. J. at 1). H.N. Wood's Complaint seeks $417,800.65 in damages (Complaint at ¶ 14), but it has moved for summary judgment only with respect to the liability portion of its claim. H.N. Wood's motion for summary judgment asserts that the Forest Service is liable for two separate breaches of the implied duty to cooperate and not to hinder a contractor's performance, and the Government contends that the Forest Service was not bound by this implied duty.

First, H.N. Wood argues that the Forest Service breached the implied duty to cooperate and not to hinder by violating Contract Clause CT6.25, which, according to H.N. Wood, is an express warranty provision. Clause CT6.25 addresses any special protective measures that the contractor must utilize to protect the habitat of endangered species. H.N. Wood's Contract stipulates "none" under this provision, which indicates that no special protective measures were necessary. H.N. Wood argues that the Forest Service's failure to identify any special protective measures in CT6.25 constitutes a warranty that the Forest Service used all reasonably available information to protect endangered species when it designed the timber sale and that no further protective measures would be necessary.

The Government, on the other hand, contends that even if it were bound by an implied duty to cooperate and not to hinder, Contract Clause CT6.25 does not constitute an express warranty that was breached by the Forest Service. According to the Government, Clause CT6.25 disavows any war-

ranty because it authorizes the Forest Service to require H.N. Wood to implement additional protective measures at any time during the term of the Contract, regardless of when the facts giving rise to those protective measures become known. The Government also argues that it did not violate any warranty that may exist under Contract Clause CT6.25 because the district court in *Mark Donham* ordered the Forest Service to conduct an adequate preaward cumulative effects analysis, but did not require the Forest Service to provide any specific protective measures for endangered species. According to the Government, this required cumulative effects analysis was not related to any of the special protective measures addressed in Clause CT6.25 or elsewhere in the Contract.

Second, H.N. Wood argues that, apart from any warranty that the Forest Service may have breached, the Forest Service's adjudicated failure to meet its statutory requirement to perform an adequate preaward cumulative effects analysis constitutes a breach of the implied duty to cooperate and not to hinder performance. The Government counters by arguing that H.N. Wood improperly seeks to impose a per se link between the district court's order in *Mark Donham* and a finding that the Forest Service breached the Contract in this case. According to the Government, H.N. Wood must do more than introduce evidence of a district court's finding that the Forest Service committed legal error in performing its preaward environmental assessment. Rather, the Government argues that H.N. Wood must demonstrate that the Forest Service acted unreasonably or otherwise breached a contractual obligation in order to recover for breach of any implied duty.

Finally, H.N. Wood argues that the length of the suspension constitutes a breach of contract, regardless of whether or not the Forest Service breached any express or implied duty in the Contract. According to H.N. Wood, even if the Forest Service validly suspended the Contract under Clause CT6.01, the suspension of its Contract has lasted so long that the Court should deem it to be per se unreasonable. H.N. Wood contends that its Contract was suspended imme-

diately after award in 1993 and that this suspension remains in effect through the present. The Government disputes the start and end dates that H.N. Wood used in calculating the length of the suspension. The Government also argues that the length of the suspension is reasonable when viewed in the context of both the proceedings in *Mark Donham* and the many other legal difficulties that the Government encountered in performing its environmental assessment for the Contract's timber sale area. The Forest Service's other legal difficulties include another adverse decision in a subsequent lawsuit related to the timber sale area. *See Graber v. Forest Service,* 98–CV–4247–JPG (S.D.Ill. Sept. 27, 1999).

The Court first addresses the applicable standard of review and then each of the parties' arguments.

### Discussion

#### A. Standard of Review

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting identical Fed.R.Civ.P. 56(c)). "At the summary judgment stage the judge's function is not * * * to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505. In performing this function, the Court treats any fact as "material" if that fact "might affect the outcome of the suit under governing law," and the Court will conclude that a dispute over a material fact is "genuine" if the evidence relating to that fact "is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. In determining whether a trial is necessary, the Court must resolve any disputes over material facts in favor of the nonmovant and draw all inferences in its favor. *Id.* at 255, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

On a motion for summary judgment, the movant bears the initial burden of showing that there are no genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–34, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant makes this showing, then the burden will shift to the nonmovant to show that there is a genuine factual issue for trial. *Id.* On the other hand, if the movant fails to submit sufficient evidence to meet its initial burden of establishing the absence of any genuine issue of material fact, then summary judgment must be denied even if the nonmovant fails to oppose the proffered evidence. *See Broomall Indus., Inc. v. Data Design Logic Sys., Inc.,* 786 F.2d 401, 405 (Fed.Cir.1986) (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

It is not appropriate for this Court to grant summary judgment where there are "unexplained gaps" in the movant's evidence, *Adickes,* 398 U.S. at 158, 90 S.Ct. 1598, particularly if those gaps relate to issues on which the movant will bear the ultimate burden of proof at trial. *See, e.g., Lencco Racing Co. v. Jolliffe,* 1999 WL 506857, at *4, 1999 U.S.App. Lexis 14239 at *9–10 (Fed.Cir. 1999) ("When the movant bears the burden of proof, however, summary judgment cannot be granted unless the movant makes a showing on each required element and the nonmovant's response fails to raise a genuine issue of material fact as to any element."). Moreover, a mere assertion by one party that its motion rests only upon undisputed facts does not relieve the Court of its responsibility to determine the appropriateness of summary disposition of the case. *See, e.g., Lockheed Martin Corp. v. United States,* 49 Fed. Cl. 241 (2001) (denying cross-motions for summary judgment where the parties failed to develop a sufficient factual record to allow the court to determine whether or not the taxpayer was entitled to a claimed credit in a tax refund case). In sum, a court must deny summary judgment if there is reason to believe that the better course would be to proceed to trial in order to obtain a full hearing of all the facts that may bear upon

the outcome of the case. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

In this case, the better course is to proceed to trial because the Court lacks a sufficient factual record to determine whether or not the Forest Service's suspension of H.N. Wood's Contract violated the implied duty to cooperate and not to hinder or was otherwise per se unreasonable.

B. *The Forest Service's Alleged Breach of the Implied Duty to Cooperate and Not to Hinder H.N. Wood's Performance.*

H.N. Wood argues that the Forest Service's suspension of the Contract violated the implied duty to cooperate and not to hinder its performance, and the Government counters that it was not bound by this implied duty. Contrary to the Government's assertion, the implied duty to cooperate and not to hinder the other party's performance is an obligation that exists in every Government contract, including timber sale contracts. *See Precision Pine & Timber, Inc. v. United States,* 50 Fed.Cl. 35, 54 (2001) (recognizing that implied duty to cooperate and not to hinder applies to timber sale contracts); *Croman Corp. v. United States,* 49 Fed.Cl. 776, 785 (2001) (same); *Cedar Lumber, Inc. v. United States,* 5 Cl.Ct. 539, 549 (1984) (same) *Wetsel–Oviatt Lumber Co. v. United States,* No. 94–389C, slip op. at 6–7 (Fed.Cl. Oct. 9, 2001) (same); *see also Lewis–Nicholson, Inc. v. United States,* 213 Ct. Cl. 192, 204, 550 F.2d 26, 32 (1977) (recognizing that implied duty to cooperate and not to hinder exists in Government contracts); *Peter Kiewit Sons' Co. v. United States,* 138 Ct.Cl. 668, 674, 151 F.Supp. 726, 731 (1957) (same); *George A. Fuller Co. v. United States,* 108 Ct.Cl. 70, 74, 69 F.Supp. 409, 411 (1947) (same). The implied duty to cooperate and not to hinder performance exists "[i]n addition to the promise of positive performance under a contract * * *." *Cedar Lumber,* 5 Cl.Ct. at 549. This implied duty is binding upon both parties in the same manner as if it were an express provision in the contract. *Precision Pine,* 50 Fed.Cl. at 54.

The cases cited by the Government do not support its assertion that the duty to cooperate and not to hinder performance should not be implied into the Contract. The Government has relied primarily upon inapposite cases in which courts addressed whether or not a separate contract could be implied in fact between the parties to an express contract. *See Hercules, Inc. v. United States,* 516 U.S. 417, 423, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996) (discussing the difference between express contracts, contracts implied in fact, and contracts implied in law); *Klebe v. United States,* 263 U.S. 188, 192, 44 S.Ct. 58, 68 L.Ed. 244 (1923) (discussing requirements of a contract implied in fact); *Somali Dev. Bank v. United States,* 205 Ct.Cl. 741, 750–51, 508 F.2d 817, 822 (1974) (same); *Algonac Mfg. v. United States,* 192 Ct.Cl. 649, 673, 428 F.2d 1241 (1970). Thus, the Government's cases address implied contracts, whereas the implied duty to cooperate and not to hinder serves merely as an additional promise implied between parties to an express contract. *See Cedar Lumber,* 5 Cl.Ct. at 549.

The Government also argues that H.N. Wood may not rely upon an implied duty to vary the express terms of the parties' Contract. The Government, however, has not demonstrated that the application of the implied duty to cooperate and not to hinder performance in this dispute would vary any of the Contract's express terms. According to the Government, the Court should disregard the implied duty to cooperate and not to hinder because the parties entered into a Contract that already addressed their respective rights and duties in the event that a court order resulted in either a termination (Clause CT8.2) or a suspension (Clause CT6.01) of the Contract.

The Government's argument lacks merit. First, it does not appear that Clause CT8.2 is at issue in this case because the Government has not asserted that the Forest Service ever invoked this provision to terminate the Contract. Second, with respect to the Forest Service's suspension authority under Clause CT6.01, several courts have already rejected the Government's position, holding that the Forest Service's implied duty to cooperate and not to hinder a purchaser's performance does not vary any of the express terms of a

timber sale contract. *See, e.g., Precision Pine,* 50 Fed.Cl. at 59 (noting that the implied duty to cooperate and not to hinder does not conflict with the express provisions of a timber sale contract that contained clause CT 6.01); *Wetsel–Oviatt,* slip op. at 6 (same); *see also Cedar Lumber,* 5 Cl.Ct. at 549 (interpreting the implied duty to cooperate in conjunction with express provisions of a timber sale contract that related to the Forest Service's obligations to furnish post-design plans in a timely manner).

Nor does it appear that the Government can distinguish this Contract from prior cases in which this Court recognized that the duty to cooperate and not to hinder is an implied term in all timber sale contracts. The Government cited both *Precision Pine* and *Wetsel–Oviatt* in its brief, and this case was stayed for over a year while the parties litigated *Wetsel–Oviatt.* H.N. Wood and the Government even agreed that *Wetsel–Oviatt* would "provide a workable framework for the parties in the instant case * * *." (Pl.'s Unopposed Motion for a Stay of Proceedings, filed Oct. 1, 2001 at 2.)[1] Therefore, just as the Court found in *Wetsel–Oviatt,* this Court finds that both H.N. Wood and the Government are bound by an implied duty to cooperate and not to hinder performance and that this duty does not conflict with any express provisions in the parties' Contract. *See id.,* slip op. at 6 (*citing Precision Pine,* 50 Fed. Cl. at 58–59).

■ In summary, the Forest Service may have been authorized to suspend H.N. Wood's Contract under Clause CT6.01 in order to comply with the district court's order in *Mark Donham,* but the Forest Service did not have absolute authority to suspend the Contract with impunity. *See id.* Rather, the Forest Service's suspension authority was qualified by its implied obligations, including its duty to cooperate and not to hinder H.N. Wood's performance. *See id.* While the Contract vested the Forest Service with discretion to suspend H.N. Wood's Contract, it was required to exercise reasonable discretion and not to act arbitrarily or capriciously.

*See Precision Pine,* 50 Fed.Cl. at 64; *see also Wetsell–Oviatt,* slip op. at 6. The Forest Service was not authorized to suspend H.N. Wood's Contract indefinitely in order to comply with a court order if its own unreasonable or wrongful actions caused the court order to be imposed in the first place, or if it unreasonably delayed in remedying the offending circumstances. *See id.* at 61, 64–65; *Wetsel–Oviatt,* slip op. at 6–7.

■ Prior decisions from this Court confirm at least two circumstances in which the Government's course of action (or inaction) in suspending a timber sale contract may violate the implied duty to cooperate and not to hinder performance. First, if the Forest Service breaches a specific warranty in the contract, then it also violates the implied duty to cooperate and not to hinder. *Precision Pine,* 50 Fed.Cl. at 59 (*citing Cedar Lumber,* 5 Cl.Ct. at 549–50). Second, apart from breaching any specific warranty, the Forest Service breaches the implied duty to cooperate and not to hinder if it unreasonably or wrongfully suspends the contractor's performance. *Id.*

Regardless of which theory the Plaintiff relies upon in this case, the Court will be required to make a fact-intensive determination as to whether the Forest Service acted unreasonably or wrongfully. The Plaintiff's summary judgment motion did not present sufficient factual evidence to meet its initial burden of establishing the absence of any genuine issues of material fact. *See Celotex Corp.,* 477 U.S. at 323–34, 106 S.Ct. 2548; *see also Broomall Indus.,* 786 F.2d at 405 (*citing Adickes,* 398 U.S. at 160, 90 S.Ct. 1598). Moreover, it is unlikely that any presentation of evidence by the Plaintiff at this stage of the litigation would be sufficient to allow the Court to make the fact-intensive findings necessary to rule for the Plaintiff on summary judgment. Such fact-intensive findings are more appropriately made after hearing all of the evidence at trial. Thus, further factual ventilation would be beneficial before the Court rules upon the Plaintiff's claims in this case. *See Philadelphia Suburban Corp.*

1. It is noted that after the Court in *Wetsel–Oviatt* denied the parties' cross-motions for summary judgment, the parties entered into settlement discussions which led to the termination of that matter before the Court.

*v. United States*, 217 Ct.Cl. 705, 707, 1978 WL 8442 (1978). For this reason, the Court denies Plaintiff's Motion for Partial Summary Judgment on Liability and discusses its reasons in more detail below.

1. *Factual disputes preclude summary judgment on Plaintiff's claim that the Forest Service violated the implied duty to cooperate and not to hinder by allegedly breaching a warranty in Contract Clause CT6.25.*

H.N. Wood argues that the Contract was suspended due to the district court's finding in *Mark Donham* that the Forest Service had not performed an adequate preaward cumulative effects analysis to assess the possible adverse effects on sensitive, threatened, and endangered species that might result from timber removal activities performed under the Contract. H.N. Wood contends that the Forest Service's adjudicated failure to perform an adequate cumulative effects analysis as a part of its environmental assessment in the first instance violates Clause CT6.25 of the Contract. H.N. Wood asserts that Contract Clause CT6.25 is an express warranty provision. Clause CT6.25 states:

CT6.25# —Protection of Habitat of Endangered Species, 6/78. Location of areas needing special measures for protection of plants or animals listed as threatened or endangered under the Endangered Species Act of 1973 are shown on Sale Area Map and identified on the ground. Measures needed to protect such areas have been included elsewhere in this contract or are as follows:

None

If protection measures prove inadequate, if other such areas are discovered, or if new species are listed on the Endangered Species List, Forest Service may either cancel under CT8.2 or unilaterally modify this contract to provide additional protection regardless of when such facts become known.

As noted by H.N. Wood, the Court in *Precision Pine* determined that Clause CT6.25 was an express warranty that the Forest Service used all reasonably available information to protect sensitive, threatened, and endangered species in designing the timber sale. 50 Fed.Cl. at 66–67. H.N. Wood also notes that the Court in *Wetsell–Oviatt* reached the same conclusion, albeit under an implied warranty theory. *Id.*, slip op. at 6.

These cases support the Plaintiff's position, but they do not definitively answer the question of whether or not the district court's finding in *Mark Donham* that the Forest Service failed to perform an adequate preaward environmental assessment also demands a finding that the Forest Service breached Contract Clause CT6.25. Neither decision suggests that an agency's adjudicated failure to perform its preaward statutory obligations in a prior lawsuit requires a finding that the agency violated an express warranty in Contract Clause CT6.25. In *Precision Pine*, the Court of Federal Claims found that Clause CT6.25 constituted an express warranty, but only a narrow warranty "that additional protection would only be imposed if measures proved inadequate due to causes that could not have reasonably been known or discovered *at the time the contract was entered into.*" 50 Fed.Cl. at 67. The Court, however, held that the contractor must prove that the Forest Service suspended the timber sale contracts at issue "in order to correct a misrepresented warranty" that the Forest Service knew about, or should have known about, when it awarded the contract. *Id.* In *Wetsel–Oviatt*, the Court of Federal Claims determined that Clause CT6.25 "constitutes an implied warranty that the FS [Forest Service] used all reasonably available information in designing the timber sales to protect sensitive species." Slip op. at 6. The Court determined that the contractor "reasonably relied on this representation," but it denied the plaintiff's motion for summary judgment because a genuine issue of material fact existed as to whether the Forest Service actually breached this warranty. *Id.*

While the Plaintiff relies on this authority in arguing that Contract Clause CT6.25 constitutes a warranty, the Federal Circuit's recent decision in *Scott Timber Co. v. United States*, 333 F.3d 1358 (Fed.Cir.2003), calls into question whether Clause CT6.25 creates any warranty, express or implied, relating to the adequacy of the measures needed to pro-

tect sensitive species. *Id.* at 1370–71. The Federal Circuit held that Clause CT6.25 did not create a warranty that the Forest Service breached by failing to provide protective measures for the marbled murrelet after the bird was listed as a threatened species. *Id.* at 1371. H.N. Wood argues that the holding in *Scott* is distinguishable on the grounds that the timber sale contract in that case was issued under Section 318 of the Department of the Interior Appropriations Act of 1990, Pub L. No. 101–121, 103 Stat. 701 (1989) and that such contracts are deemed to be in compliance with NEPA and the National Forest Management Act of 1976 ("NFMA"). *Scott,* 333 F.3d at 1370–71. It appears from the parties' submissions that H.N. Wood's Contract, on the other hand, was not deemed to be in compliance with section 318. Thus, there appears to be some merit in H.N. Wood's position.

It is not clear, however, that the Federal Circuit intended for its reasoning to be construed so narrowly. In *Scott,* the Federal Circuit also rejected the contractor's argument that Clause CT6.25 constituted an implied warranty that the Forest Service's protective measures were adequate at the time of contract award. *See id.* The court noted that an implied warranty must be "founded upon a meeting of the minds" that is "inferred" from the parties' conduct. *Id.* at 1370 (*quoting Scott Timber Co. v. United States,* 44 Fed.Cl. 170, 180 (1999) (*Scott II* )). Moreover, the court held that the contractor would only be entitled to recover for a misrepresentation in the contract documents if it could prove that it justifiably relied upon any such misrepresentation. *Id.* at 1371. The Federal Circuit concluded that "[i]n light of [the] clear language" of Clause CT6.25, the contractor "could not reasonably rely on the assumption that no further protective measures would ever be needed * * *." *Id.* On the contrary, the court pointed out that Clause CT6.25 explicitly provides that additional protective measures may be required at any time. *Id.*

■ In this case, even if H.N. Wood distinguishes its timber sale contract from the section 318 contract at issue in *Scott,* it must still prove that the Forest Service violated the purported express warranty provided in Contract Clause CT6.25. H.N. Wood, however, at this point, has not demonstrated that this provision constitutes a warranty that the Forest Service had performed an adequate cumulative effects analysis prior to awarding the Contract. Equally important, H.N. Wood has not proven that the Forest Service violated the purported warranty in Clause CT6.25 when it suspended the Contract after the district court ordered it to perform a cumulative effects analysis in *Mark Donham.*

In summary, if H.N. Wood is correct that Clause CT6.25 is a warranty provision and it proves that the Forest Service breached this warranty, then the Forest Service's breach also constitutes a violation of the implied duty to cooperate and not to hinder. *See Precision Pine,* 50 Fed.Cl. at 59 (*citing Cedar Lumber,* 5 Cl.Ct. at 549–50). Nevertheless, whether H.N. Wood ultimately relies upon an express or an implied warranty theory, there are genuine issues of material fact that preclude entry of summary judgment in its favor. Under an express warranty theory, H.N. Wood must prove that the Forest Service knew or should have known that its cumulative effects analysis was inadequate at the time the parties entered into the Contract. *See Precision Pine,* 50 Fed.Cl. at 67. The uncontroverted facts presented by H.N. Wood establish only that the district court in *Mark Donham* invalidated the Forest Service's environmental assessment *after* the Contract was awarded. Any action taken at this point would not run contrary to Contract Clause CT6.25, which, by its plain terms, authorizes the Government to implement additional protective measures after the Contract is awarded. H.N. Wood has not presented any evidence to demonstrate that the Forest Service was aware or should have been aware that its environmental assessment was inadequate *before* it awarded the Contract.

The Court also cannot grant summary judgment because H.N. Wood has not demonstrated that the Forest Service's adjudicated failure to perform an adequate cumulative effects analysis amounts to a breach of Clause CT6.25. It is not clear that a properly performed cumulative effects analysis would

have prompted the Forest Service to identify any additional special protective measures in Clause CT6.25 prior to awarding the Contract. Without any evidence that the Forest Service misrepresented any facts in Contract Clause CT6.25 or that the Forest Service suspended the Contract to correct any such misrepresentation, the Court cannot grant summary judgment to H.N. Wood on its theory that the Government breached an express warranty. *See Precision Pine*, 50 Fed. Cl. at 67.

In addition, if H.N. Wood ultimately asserts that Clause CT6.25 constitutes an implied warranty, then it must demonstrate that the parties reached a "meeting of the minds" that the Forest Service's preaward environmental assessments were adequate and that it justifiably relied upon the implied warranty. *Scott*, 333 F.3d at 1371; *Wetsel–Oviatt*, slip op. at 6. This issue presents another genuine factual dispute that precludes summary judgment. In sum, H.N. Wood has not met its initial burden of establishing a sufficient record of uncontroverted facts in support of its position that the Forest Service violated any express or implied warranty that may arise from Contract Clause CT6.25.

2. *Factual disputes preclude summary judgment on Plaintiff's claim that the Forest Service breached the implied duty to cooperate and not to hinder by its alleged unreasonable and wrongful suspension of the Contract.*

■■■■■ Even if the Forest Service did not breach a specific contractual warranty by suspending the Contract under Clause CT6.01, it could still be held liable for breach of the implied duty to cooperate and not to hinder if it acted unreasonably or wrongfully in suspending the Contract. *See Precision Pine*, 50 Fed.Cl. at 59; *Cedar Lumber*, 5 Cl.Ct. at 549–50. In order to recover under this theory, a plaintiff must prove: (1) that the cause of the suspension or delay was the Government's fault, and (2) that the suspension or delay was of sufficient magnitude or hindrance to the purchaser's timber harvesting operations to constitute a breach of the duty. *Id.* The plaintiff bears the burden of

demonstrating Government fault. *Summit Contractors, Inc. v. United States*, 23 Cl.Ct. 333, 336 (1991); *Cedar Lumber*, 5 Cl.Ct. at 550. If a plaintiff meets this burden, then the Government will have an opportunity to rebut the plaintiff's evidence and avoid liability if it can show that the agency conducted itself in a diligent, good faith manner or that the delay was excusable. *Cedar Lumber*, 5 Cl.Ct. at 550. If the Government fails to produce evidence that negates the plaintiff's initial showing of fault, then fault will be presumed. *Id.*

■■■■ Wood relies heavily upon two cases, *Precision Pine* and *Superior Timber*, IBCA No.3459, 97–1 BCA ¶ 28,736 at 143,442–43, 1996 WL 719922 (1996), to support its assertion that the Forest Service violated the implied duty to cooperate and not to hinder because of its adjudicated arbitrary and capricious failure to complete an adequate cumulative effects analysis, which ultimately led to a suspension of the Contract. The Government correctly asserts, however, that H.N. Wood's argument seeks to establish a per se link between the district court order in *Mark Donham* and a finding that the Forest Service breached the implied duty to cooperate and not hinder in this case. Even the cases cited by H.N. Wood do not support such a finding. *See Precision Pine*, 50 Fed. Cl. at 61 (stating that "even if the Forest Service had violated a statute or regulation, this would not ipso facto mean that there was an unreasonable delay"). In addition, H.N. Wood overlooks an important distinction between the suspensions at issue in *Precision Pine* and *Superior Timber* and the suspension at issue in this case: the timing of the court orders that prompted the suspensions. In *Superior Timber*, the board held that the Bureau of Land Management ("BLM") violated the implied duty to cooperate and not to hinder when it failed to adequately perform its preaward environmental assessments. 97–1 BCA ¶ 28,736 at 143,442–43. In reaching this decision, however, the board reasoned that "the timing, the cause and the extent of BLM's contract suspension amounted to BLM's breach of its implied duty not to hinder or delay appellant's performance." *Id.* at 143,442. In particular, the board determined that adverse rulings against the

BLM in preaward litigation put the BLM on notice that its environmental assessments were deficient *before* it awarded the contract. *Id.* at 143,442–43. The board also determined that the BLM had ample opportunity to correct or to otherwise address these deficiencies before awarding the contract, but the BLM failed to do so. *See id.* Therefore, the timing of the prior decisions in *Superior Timber* was key to the board's conclusion that the BLM breached the implied duty to cooperate and not to hinder in that case.

Similarly, in *Precision Pine*, the Court of Federal Claims determined that the Forest Service had no reasonable basis for failing to perform certain required environmental assessments *after* a Ninth Circuit decision, *Pacific Rivers Council v. Thomas*, 30 F.3d 1050 (9th Cir.1994), put the agency on notice that it was required to perform these assessments. *Precision Pine*, 50 Fed.Cl. at 69. Analyzing the duty to cooperate and the duty not to hinder as separate implied duties, the Court in *Precision* Pine held that the Forest Service breached the implied duty to cooperate, *id.* at 69–70, and the implied duty not to hinder for the contracts that it awarded *after* receiving the *Pacific Rivers* decision. *Id.* at 70–71. The Court noted that the Ninth Circuit's decision in *Pacific Rivers* was "clear controlling precedent" that contradicted the Forest Service's position. *See id.* at 69. Thus, the Court reasoned that the Forest Service had no reasonable basis for its failure to perform the required environmental assessments after receiving the *Pacific Rivers* decision. *See id.* at 69–70. Yet, the Forest Service still failed to perform the proper environmental analysis following *Pacific Rivers*, which prompted another court to order a suspension of the contracts at issue in *Silver v. Babbitt*, 924 F.Supp. 976, 989 (D.Ariz. 1995). *See Precision Pine*, 50 Fed.Cl. at 68–69. In sum, as with the board's decision in *Superior Timber*, the Court of Federal Claims decision in *Precision Pine* turned on *when* the Forest Service was put on notice that its environmental assessment was inadequate.

In this case, H.N. Wood has failed to proffer sufficient evidence to meet its burden of establishing that the Government is at fault

for causing the suspension because it is unclear whether the Forest Service knew or should have known that its environmental assessment was inadequate when it awarded the Contract to H.N. Wood. Unlike the contracts at issue in *Precision Pine* and *Superior Timber*, the Forest Service awarded H.N. Wood's Contract *before* it received a decision from the district court in *Mark Donham*. The Forest Service awarded H.N. Wood's Contract on September 7, 1993, over sixteen months before the district court issued its initial ruling in *Mark Donham* on January 24, 1995, or its subsequent ruling on March 30, 1995. Thus, it appears that the Forest Service may not have been aware that it would be required to perform a cumulative effects analysis and issue a new environmental assessment until after it received the district court's decisions in 1995.

The timing of these two rulings in *Mark Donham* raises several factual disputes related to whether the Forest Service conducted itself diligently and in good faith and whether it knew or should have known that its environmental assessment was inadequate when it awarded the Contract. *See Cedar Lumber*, 5 Cl.Ct. at 550. H.N. Wood has not presented any evidence to assist the Court in making these findings. Moreover, H.N. Wood's Statement of Uncontroverted Fact does not address whether it could have performed any work between its Contract award on September 7, 1993, and the formal suspension on April 13, 1995. Therefore, it is not appropriate for the Court to grant summary judgment to the Plaintiff when it has failed to meet its initial burden of proving the absence of genuine issues of material fact.

## C. The Government's Potential Liability for an Alleged Per Se Unreasonable Delay.

 Finally, H.N. Wood argues that even if the Forest Service was authorized to suspend its performance, the length of delay was per se unreasonable. According to H.N. Wood, its Contract has been suspended for 119 months, a calculation that the Government disputes. The Court finds that Plaintiff's theory is viable but that genuine issues of material fact preclude entry of summary

judgment in favor of H.N. Wood on its argument that the delay was per se unreasonable.

The Federal Circuit recently held that "clause C6.01 does not authorize the Forest Service to indefinitely or permanently suspend" a timber sale contract. *Scott*, 333 F.3d at 1368 (quoting *Scott Timber Co. v. United States*, 40 Fed.Cl. 492, 502 (1998) (*Scott I*)); *accord Precision Pine*, 50 Fed.Cl. at 60 (finding that the Government would be liable for an unreasonable delay in the suspension of a timber sale contract, no matter the cause). The Federal Circuit instructed that trial courts must scrutinize the factual record in determining whether a suspension is "reasonable" and cautioned that this determination can only be made after an "intensely factual" inquiry. *Scott*, 333 F.3d at 1369; *accord Precision Pine*, 50 Fed.Cl. at 60; *Wetsell–Oviatt*, slip op. at 6 (finding that a genuine issue of material fact precluded the plaintiff's motion for summary judgment on the reasonableness of a suspension that lasted three logging seasons, or two years); *Superior Timber*, 97–1 BCA ¶ 28,736 at 143,443 ("The amount of delay deemed to be unreasonable is relative and varies from case to case. The stamp of unreasonableness will be applied particularly when * * * the problem was foreseeable by the Government precontract.").

In this case, H.N. Wood alleges a set of facts that, if substantiated at trial, may compel a finding that the length of the suspension is per se unreasonable. Indeed, H.N. Wood argues that the Forest Service suspended its operations "almost immediately" after awarding the Contract in September 1993. H.N. Wood further argues that no timber has ever been harvested due to this suspension, which, according to H.N. Wood, continues through the present day. If these allegations are substantiated, then H.N. Wood may well prevail on its theory that the delay was unreasonably long, regardless of whether or not the Forest Service was at sufficient fault for causing the delay. Under any theory upon which the Plaintiff relies, the Government, of course, must be permitted to offer evidence that demonstrates its good faith and diligence in administering the Contract or evidence that otherwise mitigates H.N. Wood's allegations relating to the length and extent of the delay.

While the Plaintiff's argument is, in the abstract, quite compelling, it is not substantiated by uncontroverted evidence as required by RCFC 56. The Plaintiff's Statement of Uncontroverted Fact leaves the Court with unexplained gaps in the undisputed factual record. It is not appropriate for the Court to fill in these gaps by referring to any of the unsubstantiated allegations made in the Plaintiff's Complaint or in its motion. For example, H.N. Wood failed to address whether or not the suspension was foreseeable or preventable by the Forest Service prior to its award of the Contract on September 7, 1993. In addition, the Plaintiff's Statement of Uncontroverted Fact does not substantiate whether or not the Forest Service informally suspended the Contract before April 13, 1995, the date of its formal suspension notice. H.N. Wood also fails to address whether the Forest Service unduly prolonged the delay by its administration of the Contract after the formal suspension went into effect. H.N. Wood asserts—again without any substantiating evidence—that the Forest Service lifted the suspension on August 24, 1996, only to impose a new suspension on September 10, 1996. No explanation has been offered for this brief lifting of the suspension. Finally, the parties dispute as a matter of fact and law whether the Contract expired in 1997, or whether it could have been extended beyond that date.

In summary, the sparse undisputed record contains many factual and legal questions that require further ventilation before this Court can determine whether or not the delay was per se unreasonable. Further ventilation is particularly important given the Federal Circuit's cautionary instruction in *Scott* that the reasonableness of a prolonged suspension is an "intensely factual" issue. 333 F.3d at 1369. Accordingly, the Court denies Plaintiff's Motion for Partial Summary Judgment to the extent that it is based solely upon the length of the delay.

D. *H.N. Wood May Not Obtain Summary Judgment Without Proving the Existence of Damages, Even if the Exact Amount of Damages May Be in Dispute.*

 H.N. Wood moved for summary judgment only on the issue of liability. Nev-

ertheless, H.N. Wood acknowledges that Contract Clause CT6.01 includes a damages limitation provision that may preclude it from obtaining any damages resulting from the suspension. According to H.N. Wood, this damages limitation provision does not apply where the Government has breached the implied duty to cooperate and not to hinder its performance. The Government disputes this contention. The parties addressed this damages question in a cursory manner in their submissions. While it is not necessary for the Court to decide this question at this preliminary stage of the litigation, the Court notes that H.N. Wood must prove the existence of damages as part of its prima facie case. *See, e.g., Cedar Lumber,* 5 Cl.Ct. at 550 (discussing whether a suspension violated the implied duty to cooperate and not to hinder and stating that "[n]o matter how unreasonable the delay by defendant, in order to recover the plaintiff must show that the delay caused material damage"). H.N. Wood has not argued that the Contracting Officer misinterpreted Contract Clause CT6.01 when he determined that all of H.N. Wood's claimed damages were excluded by this provision. Further, H.N. Wood has not conclusively demonstrated that it can recover additional damages under the implied duty to cooperate and not to hinder that are not otherwise recoverable under the Contract. Thus, even if H.N. Wood had presented an undisputed record that supported a finding that the Forest Service breached the implied duty to cooperate and not to hinder, H.N. Wood would not have been entitled to summary judgment because it has not shown that the damages limitation provision in Contract Clause CT6.01 is inapplicable where the Forest Service's suspension of the Contract violates this implied duty. As stated above, given the parties' cursory arguments on this issue and the preliminary stage of the litigation, it is not necessary for the Court to decide this question.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment on the Issue of Liability is DENIED. The parties are directed to submit a status report (joint, if possible) within 30 days of the date of this decision informing the Court of their views as to how the parties plan to proceed with this case.